BOARD OF MANAGERS OF THE JAMES WALKER MEMORIAL HOS-
PITAL OF WILMINGTON, NORTH CAROLINA, v. THE CITY OF
WILMINGTON AND NEW HANOVER COUNTY.

(Filed 25 February, 1953.)

**1. Constitutional Law § 10b—**

All reasonable doubt must be resolved in favor of the constitutionality
of an act of the General Assembly, and a statute will not be declared un-
constitutional unless it is clearly so. But when a statute clearly trans-
gresses the authority vested in the Legislature by the Constitution, it is
the duty of the Court to declare the act unconstitutional.

**2. Statutes § 2—**

Chap. 906 Session Laws 1951, Chap. 470 Public-Local and Private Laws
1939, Chap. 8 Public-Local Laws 1937, which authorize the City of Wilming-
ton and the County of New. Hanover to make provision for the hospitali-
zation and medical care of the indigent sick and afflicted poor of the city
and county, are all local acts relating to health and are void as being in
direct conflict with Art. II, sec. 29, of the Constitution of N. C.

**3. Municipal Corporations § 5: Estoppel § 10: Waiver § 1—**

A municipality cannot be estopped from challenging the constitutionality
of laws affecting it in its governmental capacity, nor may it by its acts
waive its right to attack such statutes as unconstitutional.

**4. Statutes § 12—**

A statute which is unconstitutional is void and cannot have any effect.
Therefore provision in such unconstitutional act for the repeal of prior
statutes can have no effect, and such prior statutes remain in force.

**5. Taxation § 4—Providing medical care for indigent sick is not necessary
expense within meaning of Art. VII, sec. 7, unless authority is delegated.**

A municipality which is exempt from the provisions of G.S. 160-229 and
a county which is exempt from the provisions of G.S. 153-152, and which
therefore are not agencies of the State in caring for the indigent sick,
Constitution of N. C., Art. XI, sec. 7, may not incur a debt or levy a tax
for the purpose of defraying the expenses of a hospital in caring for the
indigent sick of the city and county, since such expense is not a necessary
governmental expense of the city and county within the meaning of Art.
VII, sec. 7, of the Constitution of N. C. The provisions of Chap. 66 Public-
Local Laws of 1915, Chap 38 Private Laws 1907, Chap. 12 Private Laws
1901, providing that such city and county make payments to a designated
hospital for this purpose without a vote of the people, are void.

**6. Trial § 54—**

In a trial by the court under agreement of the parties, the rules as to
the admission and exclusion of evidence are not so strictly enforced as in
a jury trial, since the court is to determine what he will consider and his
rulings are subject to review.

**7. Appeal and Error § 40d—**

   Where the findings of fact of the trial court are supported by competent evidence they will not be disturbed, and the fact that some incompetent evidence may also have been admitted cannot be held prejudicial.

**8. Declaratory Judgment Act § 2a—**

   The determination of the obligation of a municipality to make payments to a hospital under local acts of the Legislature is a proper case for a declaratory judgment, and nonsuit is properly denied in such action upon pleadings and evidence properly presenting such question.

**9. Declaratory Judgment Act § 3—**

   In a suit under the Declaratory Judgment Act the court may make such award of costs as may seem equitable and just, and where the proceeding is to declare the rights, status and other legal relations existing among the three parties to the suit, it is equitable that the costs be equally divided among the three parties.

**10. Health § 1—**

   The obligation to pay the costs for medical care of the indigent sick and afflicted poor rests upon the State, Art. XI, sec. 7, of the Constitution of N. C., and not upon a county of the State unless the General Assembly has delegated to it such duty.

**11. Municipal Corporations § 7a: Counties § 1—**

   A county and a city within the county joined in providing funds for the medical care of the indigent sick and afflicted poor of the city and county. *Held:* A contention of the city that its taxpayers had discharged its obligation when a county-wide tax was levied for this purpose, is untenable.

DEVIN, C. J., concurring.

APPEALS by plaintiff and both defendants from *Carr, J.,* at August Civil Term, 1952, of NEW HANOVER.

Civil action for a declaratory judgment adjudging the rights of the plaintiff to support from both defendants for the care of the indigent sick and afflicted poor of the city and county in James Walker Memorial Hospital of Wilmington, and for a mandatory injunction compelling the City of Wilmington to pay one-half of such expense, and in the alternative in the event the Court should hold the city not liable, the County of New Hanover should pay all.

Judgment was rendered by the court as follows:

"This cause came on to be heard before his Honor Leo Carr, Judge Presiding at the August 1952 Civil Term of the Superior Court of New Hanover County, North Carolina, and being heard, and all parties having waived a jury trial and agreed that the Court might hear the evidence, find the facts and render judgment; and, after hearing all of the evidence of all parties and the argument of counsel, the Court finds the following facts:

"1. The General Assembly of 1881 passed an Act authorizing the City of Wilmington and County of New Hanover to buy property and build a hospital or dispensary and the City and County purchased Block 227 of the official plan of the City of Wilmington for that purpose and erected thereon a hospital or dispensary and the same was operated by the defendants through a Board of Managers appointed by the defendants with the expense being borne three-fifths by the County and two-fifths by the City.

"2. In 1900, Mr. James Walker offered to build on the property aforesaid a modern hospital and pursuant to the offer of James Walker the City and the County appointed committees to investigate the subject and after the report of said committees and consideration thereof by the City and County, the offer of James Walker was accepted.

"3. In accordance with the offer aforesaid, the said hospital was incorporated in accordance with and under the provisions of Chapter 12 of the Private Laws of the General Assembly of 1901 incorporating the Board of Managers of James Walker Memorial Hospital and granting to said corporation the right of succession, control and management of said hospital, as will more fully appear from said charter, Exhibit 3 attached to the Complaint herein, and the original members of said Board were appointed in accordance with the said charter and the County of New Hanover was to pay three-fifths of the maintenance thereof and the City of Wilmington to pay two-fifths of such maintenance, with the said hospital to be operated under the provisions of Chapter 12 aforesaid, and annual reports of such operation were to be made by said Board of Managers to the City and County. Under the provisions of said charter, it is provided that said hospital shall be operated to provide medical care of sick and infirm poor persons who may from time to time become chargeable to charity of the City and County and for other persons who may be admitted.

"4. The said charter further provided that the management of said hospital should be removed as far as possible from the vicissitudes which generally result when such an institution is left entirely under the control of local municipal authorities subject to changing political conditions and its efficiency in some degree thereby crippled. And for said reasons the management and control of said hospital was under said charter vested in its incorporated Board of Managers.

"5. During the year 1900, James Walker, pursuant to his offer, began the construction of the original building on the site aforesaid, which was not completed at the time of his death, and in and by his will he directed his executors to complete the same, which was done, and thereafter the said structure was presented to the City and County and accepted by them.

"6. After the incorporation of said Board of Managers and the acceptance of the structure as aforesaid, the City and County conveyed all of Block 227 of the official plan of the City of Wilmington containing said hospital structure to said incorporated Board of Managers to hold the same in trust for the use of the hospital so long as the same shall be used and maintained as a hospital for the benefit of the County and City, and in case of disuse or abandonment to revert to the said County and City as their interest respectively appears in the deed aforesaid.

"7. From time to time, until June 30, 1951, the City and County made appropriations to said hospital for the support and maintenance of the indigent sick and afflicted poor treated at said institution who were sent to said hospital from the City and County.

"8. That, under the provisions of Chapter 66 of the Private Laws (*sic*) of the General Assembly of 1915, it is provided that appropriations to be made by the City and County are to be in equal amounts and said Act directs that annual appropriations so made shall be in the sum of at least $15,000. Since 1915 the said appropriations have been made by said City and County in equal amounts.

"9. That, in addition to the statutes passed in 1901, including the charter of said hospital, the following Acts of the Legislature have been passed: Chapter 38 of the Private Laws of 1907, Chapter 66 of the Public-Local Laws of 1915, Chapter 8 of the Public-Local Laws of 1937, Chapter 470 of the Public and Private Laws of 1939, and Chapter 906 of the Session Laws of 1951. Appropriations were made pursuant to the aforesaid Acts except the Act of 1951.

"10. The original charter of the plaintiff was to run for a period of thirty years and thereafter the said charter was amended to give the plaintiff perpetual existence.

"11. Beginning with the fiscal year starting July 1, 1951, the defendant City of Wilmington ceased to make contributions to said hospital or to contribute to the cost of caring for the indigent sick and afflicted poor certified to said hospital for hospitalization and medical care, said action being taken by the City of Wilmington upon its Council being advised that Chapter 906 of the Session Laws of 1951 was unconstitutional and invalid for that said Act violated Article II, Section 29, of the Constitution of North Carolina, and violated Article II, Section 14, of said Constitution, as will more fully appear by the minutes of the Council of the City of Wilmington at its meeting duly held on July 20, 1951.

"12. At the meeting of the Council of the City aforesaid a motion was unanimously adopted providing for calling and holding of a joint meeting of the City Council, the Board of County Commissioners and the Board of Managers of said hospital.

"13. On July 23, 1951, pursuant to the aforesaid action of the City-County, a joint meeting of said Boards was held, including five members of the said Board of Managers, at which meeting the reasons for the City of Wilmington ceasing to make contributions for the purposes aforesaid were fully stated, as will appear from the minutes of the meeting of July 23, 1951.

"14. Thereafter, and on July 25, 1951, the Council of the City of Wilmington, in meeting assembled, stated its reasons for ceasing to make payments to said hospital for the medical care of the indigent sick and afflicted poor, as will more fully appear from the minutes of said meeting.

"15. During the fiscal year beginning July 1, 1951, and ending June 30, 1952, the County of New Hanover paid monthly to said hospital one-half part of the cost of providing medical care and hospitalization for the indigent sick and afflicted poor in the sum of $24,048, which was the balance after crediting $1.50 per person per day paid to said hospital by the Medical Care Commission, and $1.00 per day per person paid by Duke Endowment. Monthly statements were sent by said hospital to the City and County showing the cost and the days of medical care rendered the indigent persons, which amounts as shown therein the Court finds to be reasonable and proper, and that the total expense incurred by said hospital during said fiscal year, after crediting the amounts paid as aforesaid by the Medical Care Commission and Duke Endowment, amounts to $48,096.

"16. That, during the period of years between the completion of the original unit constructed on Block 227 by James Walker, various additions and enlargements have been made to said hospital and the section known as the South Wing and other additions have been made and constructed upon premises adjoining Block 227, the title to which premises was acquired by and is owned by the plaintiff. Certain of the additional structures and additions were made by gifts from interested individual citizens and by grants made by the Federal Government.

"17. The Associated Charities, an organization operating in the City of Wilmington for a number of years, heretofore certified to said hospital indigent persons for hospitalization and medical care, and after the said Associated Charities ceased to exist all indigent persons sent to said hospital from the City and County have been investigated and certified by the New Hanover County Superintendent of Public Welfare since 1946.

"18. That the general fund budget of the City of Wilmington for the fiscal year beginning July 1, 1952, and ending June 30, 1953, has been tentatively adopted and a tax rate of $1.95 upon the $100 valuation of taxable property has been set, and if an appropriation during said fiscal year to the plaintiff in the sum of $24,048 should be made that the general fund budget expenditures of said City would be accordingly increased and

would result in an increase in said tax rate of approximately 4½c upon the $100 valuation of taxable property within the City of Wilmington. The tax rate for said City for the year ending June 30, 1952, was $2.00 upon the $100 valuation.

"19. That the tax valuation of property for the year 1951 in New Hanover County amounted to $89,810,173, and that the tax valuation of property within the boundaries of the City of Wilmington for said year amounts to $60,592,596, and that when the County of New Hanover makes a county-wide tax levy to provide one-half of the costs of any joint appropriation between the said City and County, the County collects approximately 67% of such levy from citizens and property within the City of Wilmington, and that when the City of Wilmington makes a city-wide tax levy to cover the remaining part of any joint appropriation between the City and County all of said one-half part of said joint appropriation is paid by City taxpayers which results in City taxpayers paying approximately 84% of the aggregate sum of any such joint appropriation. During the last three years approximately 72% of the indigent persons certified to said hospital for treatment lived within the City of Wilmington.

"20. That the City of Wilmington at no time instituted any action in Court to have any of the Acts of the General Assembly referred to in this cause declared unconstitutional and the constitutionality of such Acts was not attacked in Court by any proceeding prior to the institution of this action.

"21. That said hospital has no surplus earnings with which it can absorb a deficit of $24,048 incurred in providing medical care and hospitalization for the indigent sick and afflicted poor during the fiscal year beginning July 1, 1951, and ending June 30, 1952, and said hospital cannot continue to operate in an efficient manner unless said sum is paid by one or both of the defendants.

"Upon the foregoing findings of fact, the Court is of the opinion and concludes as a matter of law as follows:

"1. That Chapter 8 of the Public-Local Laws of 1937, Chapter 470 of the Public-Local and Private Laws of 1939, and Chapter 906 of the Session Laws of 1951 contravene Article II, Section 29, of the Constitution of North Carolina, and are therefore void and of no effect.

"2. That it is the legal duty of the defendant City of Wilmington to pay to the plaintiff the sum of $24,048 to cover the deficit incurred by plaintiff in providing hospitalization and medical care for the indigent sick and afflicted poor for the fiscal year beginning July 1, 1951, and ending June 30, 1952, and that the plaintiff is entitled to a *mandamus* to compel the City to pay said amount.

"3. The City of Wilmington has the legal duty to meet with the Board of Commissioners of New Hanover County and make provision for such financial support as in the judgment of said joint Boards the said hospital needs in order to continue its operation in an efficient manner for the fiscal year beginning July 1, 1952, and ending June 30, 1953.

"4. After the said joint Boards determine what the County and City will do in respect to financial support for said hospital for said fiscal year 1952-1953 the Board of Commissioners of New Hanover County will then be under the legal duty to make such appropriations as in the judgment of said Board will be required to pay the balance that will be needed by the said hospital in order to care for the indigent sick and afflicted poor who are certified to said hospital as hereinbefore set forth and treated therein during said fiscal year.

"5. The parties to this action are entitled as a matter of law to have a Judgment entered, as hereinafter set out, and the Court, therefore, enters said Judgment.

"Now, therefore, it is ordered, adjudged and decreed as follows, to wit:

"1. That Chapter 8 of the Public-Local Laws of 1937, Chapter 470 of the Public-Local and Private Laws of 1939, and Chapter 906 of the Session Laws of 1951 are all unconstitutional, void and of no effect.

"2. That it is the legal duty of the defendant City of Wilmington to pay to the plaintiff the sum of $24,048 for the purpose and to cover the period of time as hereinbefore set forth, and the said City of Wilmington is hereby ordered and directed to make said payment to the plaintiff.

"3. That the Council of the City of Wilmington forthwith meet with the Board of Commissioners of New Hanover County to make provision for such financial support as in the judgment of the said joint Boards said hospital needs in order to continue its operation in an efficient manner for the fiscal year beginning July 1, 1952, and ending June 30, 1953, and that the said Council of the City of Wilmington pay during said fiscal year to the plaintiff not less than $7,500.

"4. That after the said Boards determine what the City and County will do in respect to financial support for the said hospital for the fiscal year 1952-1953, the Board of Commissioners of New Hanover County is under the legal duty to and it is hereby ordered that the said Board of Commissioners of New Hanover County make such other appropriation as in the judgment of said Board is required to pay the balance that will be needed by the plaintiff in order to care for the indigent sick and afflicted poor certified and admitted to said hospital during said fiscal year as certified to it by the Superintendent of the County Board of Public Welfare.

"5. It is further ordered that the defendant City of Wilmington pay the costs of this action."

The plaintiff and both defendants appealed, assigning errors.

*Isaac C. Wright and Alton A. Lennon for plaintiff, appellant.*
*Wm. B. Campbell for defendant, City of Wilmington, appellant.*
*Marsden Bellamy and David H. Scott for defendant, County of New Hanover, appellant.*

PARKER, J.  For brevity the plaintiff will be referred to as the Hospital, the defendant the City of Wilmington as the City, and the defendant the County of New Hanover as the County.  The plaintiff's assignment of Error No. 4: The court's conclusion of law No. 1 that Chapter 8 of the Public-Local Laws of 1937, Chapter 470 of the Public-Local and Private Laws of 1939, and Chapter 906 of the Session Laws of 1951 contravene Art. II, Sec. 29, of the Constitution of North Carolina, and are all unconstitutional and void, and the court's adjudication No. 1 to the same effect.  The County's assignment of Error No. 3 is similar, with this addition that if said acts are all unconstitutional then the prior acts of the Legislature are effective to require appropriations for the Hospital to be made one-half by the City and one-half by the County.

The City has challenged the constitutionality of the above three solemn and deliberate acts of the Legislature of the sovereign State of North Carolina, which always presents a serious question for determination by a court.  The City having thrown down the gauntlet takes upon itself the burden of proving such acts, or any one or more of them, are unconstitutional beyond all reasonable doubt.  "It is an elementary principle of law, as held by the U. S. Supreme Court, that no act can be held unconstitutional unless it is so 'proved beyond all reasonable doubt.'  *Ogden v. Saunders,* 12 Wheaton, 213; Cooley Cons. Lim. (7 Ed.), 254.  This is quoted with approval in *Sash Co. v. Parker,* 153 N.C. 134.  To same purport, *Walker, J., Johnson v. Board of Education,* 166 N.C. 468; *Whitford v. Comrs.,* 159 N.C. 160; *Hoke, J., in Bonitz v. School Trustees,* 154 N.C. 379.  All reasonable doubts must be resolved in favor of the constitutionality of legislation.  *Allen, J., In re Watson,* 157 N.C. 347.  Every presumption is in favor of the constitutionality of an act of the Legislature, and all doubts must be resolved in support of the act.  The courts may resort to an implication to sustain an act, but not to destroy it."  *Bickett v. Tax Com.,* 177 N.C. 433, 99 S.E. 415.  It is too axiomatic to require the citation of authority that when it is clear a statute transgresses the authority vested in the Legislature by the Constitution, it is the duty of the court to declare the act unconstitutional.  Any other course would lead to the destruction of constitutional government.

The pertinent part of Art. II, Sec. 29, of the North Carolina Constitution is: "The General Assembly shall not pass any local, private, or

special act or resolution . . . relating to health, sanitation, and the abatement of nuisances." This section of the Constitution was adopted in the General Election of 1916, and manifestly has no application to local, private or special acts relating to health enacted by the Legislature prior to 1916. *Roebuck v. Trustees,* 184 N.C. 144, 113 S.E. 676.

Ch. 906 of Session Laws 1951 reads in part the City and the County "hereby are authorized and directed to enter into a contract with the James Walker Memorial Hospital, making proper and adequate provision for the hospitalization, medical attention, and care of the indigent sick and afflicted poor of said city and county, etc." Ch. 470, Public-Local and Private Laws 1939, contains the exact words quoted from the 1951 Act, except the words "and directed." Ch. 8, Public-Local Laws 1937, provides for the payment of $25,000.00 each by the City and County to the Hospital to provide medical and hospital attention for the care and maintenance of the indigent sick and afflicted poor of the City and County.

In *Board of Health v. Comrs. of Nash,* 220 N.C. 140, 16 S.E. 2d 677, it was held that a law affecting the selection of a health officer of Nash County was a law relating to health; and this act applicable to Nash County only, providing that the county commissioners should approve the election of a health officer, was unconstitutional as violating Art. II, Sec. 29, of the Constitution of North Carolina. See also *Sams v. Comrs. of Madison County,* 217 N.C. 284, 7 S.E. 2d 540. A law undertaking to confer power upon the Board of Aldermen of the City of Winston-Salem and the Board of County Commissioners of Forsyth County to consolidate their public health offices and departments, to name a joint city-county board of health, and to appoint a joint city-county health officer was a law relating to health, and was held void for repugnancy to Art. II, Sec. 29, of the Constitution. *Idol v. Street,* 233 N.C. 730, 65 S.E. 2d 313.

The Legislature at its session in 1935 enacted Ch. 64, Public Laws 1935 (codified G.S. 160-229), which amends C.S. 2795 (now G.S. 160-229) by adding at the end thereof all of Ch. 64. C.S. 2795 is under Part 5 "Protection of Public Health," Article 15, Ch. 56, Municipal Corporations. G.S. 160-229 is under Part 5 "Protection of Public Health," Sub-Chapter II, Chapter 160, Municipal Corporations. The 1935 amendment empowered the governing body of a town or city to contract with a public or private hospital for medical treatment and hospitalization of the afflicted poor of the town or city. This was a general law applicable to the State as a whole, except as to the counties and cities or towns excepted therefrom, among which was the City of Wilmington. In *Martin v. Raleigh,* 208 N.C. 369, 180 S.E. 786, Ch. 64, Public Laws 1935, was held constitutional, and for a necessary municipal expense not requiring the

approval of the qualified voters of the city as a prerequisite to the validity of the tax and not in violation of Art. VII, Sec. 7, of the Constitution.

Ch. 65, Public Laws 1935 (codified G.S. 153-152), amended C.S. 1335 (now G.S. 153-152) by adding at the end thereof all of Ch. 65. C.S. 1335 is under Art. 8 "County Poor," Ch. 24, Counties and County Commissioners. G.S. 153-152 is under Art. 13 "County Poor," Ch. 153, Counties and County Commissioners. The 1935 Amendment to C.S. 1335 is similar to the 1935 Amendment to C.S. 2795 except that it applies to counties. This was a general law applicable to the State as a whole, except as to the counties exempted, among which was New Hanover. In *Martin v. Wake County,* 208 N.C. 354, 180 S.E. 777, the 1935 amendment was held constitutional and a county tax to provide funds for care of the indigent sick was held for a necessary expense not requiring approval of the voters, and not in violation of Art. VII, Sec. 7, of the Constitution.

It would seem the Legislature at its session in 1935 considered that Ch. 64 of its laws enacted then related to health. This law was enacted as a general law, so as not to conflict with Art. II, Sec. 29, of the Constitution.

The Legislature since 1916, by local, special or private acts, has increased or decreased the jurisdiction of certain courts inferior to the Superior Court, which courts were already *in existence.* The prohibition of Article II, Sec. 29, of the Constitution of North Carolina is against the *establishment* of such courts, and these cases are not in point. *Provision Co. v. Daves,* 190 N.C. 7, 128 S.E. 593; *S. v. Horne,* 191 N.C. 375, 131 S.E. 753; *Williams v. Cooper,* 222 N.C. 589, 24 S.E. 2d 484. A local statute was enacted by the Legislature in 1925 enlarging the jurisdiction of the Town of Lumberton, when it already had jurisdiction over streets, to include sidewalks and alleys. The prohibition of the Constitution is against "the laying-out, opening, altering, maintaining or discontinuing highways, streets or alleys" by local, special or private act. This act was held to merely increase the authority already conferred upon the Town of Lumberton in 1907, and was not unconstitutional as violating Art. II, Sec. 29, of the Constitution. *Dees v. Lumberton,* 211 N.C. 31, 188 S.E. 857. The Legislature in 1915 authorized Wilkes County to issue bonds to provide for a uniform, comprehensive, and practical system of roads in the county. The Legislature by local act in 1919 increased the amount of the bond issue. This was held not prohibited by Art. II, Sec. 29, of the Constitution, which prevents the enactment of any local, private, or special act authorizing the laying-out, opening, maintaining or discontinuing of highways. *Commissioners v. Pruden,* 178 N.C. 394, 100 S.E. 695. A school district had been defined as to boundaries, etc., by a Private Law enacted in 1905. The Legislature in 1921 enacted a Private

Law authorizing an increase of the bonds to be issued from $3,000.00 to $50,000.00. This was not repugnant to Art. II, Sec. 29, of the Constitution which prohibits local acts from "establishing or changing the lines of school districts." *Roebuck v. Trustees, supra.*

*Hailey v. Winston-Salem,* 196 N.C. 17, 144 S.E. 377; *Hill v. Comrs.,* 190 N.C. 123, 129 S.E. 154; *Advisory Opinion,* 227 N.C. 716, relied upon by the Hospital are distinguishable.

A local act is one operating only in a specified locality. *S. v. Dixon,* 215 N.C. 161, 1 S.E. 2d 521. The three acts of the Legislature adjudged unconstitutional by the trial court operate in New Hanover County, and are beyond peradventure local acts.

These three acts do not apply to the poor like building a county home. Under Art. XI, Sec. 7, of the Constitution of North Carolina a county may build a county home for such poor as a necessary expense without the approval of the voters. *Comrs. v. Spitzer,* 173 N.C. 147, 91 S.E. 707. These three acts authorize the City and County to make provision for "the hospitalization, medical attention, and care of the indigent sick and afflicted poor" of the City and County alone. To come within the provisions of these three acts the poor must be sick and afflicted. The constitutional prohibition is against local acts relating to health. It seems clear beyond all reasonable doubt that the three acts adjudged unconstitutional are all local acts relating to health and void, as in direct conflict with Art. II, Sec. 29, of the North Carolina Constitution.

The hospital's assignment of Error No. 6, "His Honor erred in not finding as a fact that the defendant City had given its solemn pledge for its generous support to said hospital for the maintenance and medical care of the sick and infirm poor persons who might from time to time become chargeable to the said City and County." The Hospital in its brief argues under this assignment of error that the City was estopped to challenge the constitutionality of the three laws adjudged unconstitutional by the trial court, and further had waived any right to do so. The City cannot be estopped from challenging the constitutionality of laws affecting it in its governmental capacity. "A municipality is not estopped to assert that its policy in a particular matter has been in violation of the Constitution and that it is prohibited from pursuing such course in the future." 38 Am. Jur., Municipal Corporations, p. 378. "The doctrine of *ultra vires* is applied with greater strictness to public than to private corporations, and the rule is that a municipality . . . is not estopped by an act or contract which is beyond the scope of its corporate powers, especially where the party claiming the estoppel was aware of the municipal incapacity or used no diligence to ascertain whether it had the power which it assumed to exercise." 21 C.J., Estoppel, p. 1194-5. C.J. cites in support of this rule of law numerous cases, including *Bank*

*v. Comrs. of Oxford,* 119 N.C. 214, 25 S.E. 966, 34 L.R.A. 487. This assignment of error is not upheld.

A waiver may be tersely defined as a voluntary relinquishment of a known right. "A waiver is not, however, allowed to operate so as to . . . transgress public policy or morals." 56 Am. Jur., Waiver, p. 105-6. In the general election of 1916 the people of North Carolina by their votes wrote into their fundamental law, The General Assembly shall not pass any local, private or special act "relating to health." Their votes fixed the public policy of the State as to health in that respect. Their decision is final, and no municipal corporation or county can waive the constitutional inhibition.

The trial court was correct in adjudging that Ch. 8 Public-Local Laws 1937, Ch. 470 Public-Local Laws 1939, and Ch. 906 Session Laws 1951 are all unconstitutional and void as in direct conflict with Article II, Sec. 29, of the Constitution. The plaintiff's Assignment of Error No. 4, and the defendant County of New Hanover's Assignment of Error No. 3 to the trial court adjudging those laws unconstitutional are untenable.

The three acts of the Legislature above held to be unconstitutional have not repealed any laws enacted prior thereto. "Since an unconstitutional law is void, the general principles follow that it imposes no duties, confers no rights, creates no office, bestows no power or authority on anyone, affords no protection, and justifies no acts performed under it . . . A void act cannot be legally inconsistent with a valid one. Moreover, an unconstitutional law cannot operate to supersede any existing valid law. Accordingly, where a clause repealing a prior law is inserted in an act, which act is unconstitutional and void, the provisions for the repeal of the prior law will usually fall with it and will not be permitted to operate as repealing such prior law." 11 Am. Jur., Constitutional Law, p. 828-9. "An unconstitutional law is void and is as no law." *S. v. Williams,* 146 N.C. 618, 61 S.E. 61, 17 L.R.A. (N.S.) 299, 14 Anno. Cases 562. Therefore Ch. 23 Private Laws 1881 and Ch. 181 Private Laws 1881; Ch. 12 Private Laws 1901, Ch. 38 Private Laws 1907, and Ch. 66 Public-Local Laws 1915 have not been repealed or modified or in any way affected by the laws enacted in 1937, 1939 and 1951, which are all unconstitutional.

The City assigns as errors the trial court's conclusions of law 2, 3 and 5 and the court's adjudications Nos. 2 and 3—Assignments of Error Nos. 20, 21 and 22.

The trial court's conclusions of law 2, 3 and 5 and adjudications Nos. 2 and 3 were based upon Ch. 66 Public-Local Laws 1915, which is as follows:

"An act to equalize the appropriations, made for the support of the James Walker Memorial Hospital, between the Board of Commissioners of New Hanover County and the Council of the City of Wilmington.

*"The General Assembly of North Carolina do enact:*

"SECTION 1. That all appropriations made by the Board of Commissioners of New Hanover County and the council of the City of Wilmington for the support of the James Walker Memorial Hospital shall be contributed and paid in equal proportions—one-half by the Board of Commissioners of New Hanover County and one-half by the council of the City of Wilmington.

"SEC. 2. The Board of Commissioners of New Hanover County and the council of the City of Wilmington shall jointly fix the amounts of said appropriations in such sums as they may deem wise and proper: *Provided,* the appropriations in any one year shall not be less than fifteen thousand dollars ($15,000).

"SEC. 3. That all laws and clauses of laws in conflict with this act are hereby repealed.

"SEC. 4. That this act shall be in force from and after its ratification. Ratified this the 4th day of Feb., A. D. 1915."

This act states definitely that its sole purpose is "for the support of the James Walker Memorial Hospital." Is such support a necessary governmental expense within the meaning of Article VII, Sec. 7, of the North Carolina Constitution? The answer under our decisions is "No."

In *Armstrong v. Comrs.,* 185 N.C. 405, 117 S.E. 388, it was held that a hospital for tubercular patients was not a necessary governmental expense for Gaston County.

In *Nash v. Monroe,* 198 N.C. 306, 151 S.E. 634, it was held that the maintenance of a hospital was not a necessary governmental expense for the Town of Monroe. The Court said: " 'For purposes other than necessary expenses a tax cannot be levied within or in excess of the constitutional limitation except by a vote of the people under special legislative authority.' (Citing authorities.) Undoubtedly, if the City of Monroe had the money in its treasury, it could purchase equipment for its hospital. (Citing authorities.) But the City of Monroe did not have such funds in hand and undertook to pledge the faith and credit of the city in order to obtain the money. This cannot be done except in accordance with the methods provided by law." See also *Burleson v. Board of Aldermen,* 200 N.C. 30, 156 S.E. 241.

In *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668, the purpose of the bond issue was to construct an addition to the county hospital to be used principally for the care of the indigent sick and afflicted poor of the county, and this Court said: "The question: Is the building of annex to county hospital a necessary expense within the meaning of Article VII, Sec. 7, of the Constitution of North Carolina? The answer is 'No.' "

In *Sessions v. Columbus County,* 214 N.C. 634, 200 S.E. 418, this Court said: "The finding and conclusion of the trial court that the

hospital here proposed is not a necessary expense of the county within the meaning of Art. VII, Sec. 7, of the Constitution is directly supported by what was said in *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668; *Burleson v. Spruce Pine,* 200 N.C. 30, 156 S.E. 241; *Nash v. Monroe,* 198 N.C. 306, 151 S.E. 634; and *Armstrong v. Comrs.,* 185 N.C. 405, 117 S.E. 388."

There is no finding of fact by the trial court that the City or the County had money in its treasury to support the Hospital. In its findings of fact No. 18 the trial court found that if an appropriation should be made by the City to the Hospital during the fiscal year from 1 July, 1952, through 30 June, 1953, the City would have to increase its tax rate approximately 4½c upon the $100.00 valuation of taxable property.

Art. VII, Sec. 7, of the North Carolina Constitution provides: "No debt or loan except by a majority of voters.—No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

There is no evidence, nor finding of fact, that a majority of the qualified voters of the City or the County have ever voted to support the Hospital. Such being the case, and as the support of the Hospital is not a necessary governmental expense, neither the City nor the County can contract any debt, pledge its faith or loan its credit, nor can they levy any tax or collect any to support the Hospital, nor can the City or County pay any money derived from such sources for the support of the Hospital.

The trial court's conclusions of law 2, 3 and 5 and adjudications of law 2 and 3 are at variance with our decisions and the City's assignments of error Nos. 20, 21, 22 and 23 thereto are sustained.

The County assigns as Error No. 4 the trial court's conclusion of law No. 4 and that part of its adjudication of paragraph 3 which reads "and that the said council of the City of Wilmington pay during said fiscal year to the plaintiff not less than $7,500.00" and its adjudication paragraph 4. By reason of what is said above this assignment of error is sustained. For the reasons stated above the County's assignment of Error No. 5: That the trial court erred in its adjudication No. 3 is sustained.

Ch. 38 Private Laws 1907 is as follows:

"An Act to Improve the Efficiency of the James Walker Memorial Hospital, of Wilmington, North Carolina.

*"The General Assembly of North Carolina do enact:*

"SECTION 1. That the Board of Commissioners of New Hanover County, and the Mayor and Board of Aldermen of the City of Wilmington, by and with the consent of the board of audit and finance, be and

they are hereby empowered to appropriate, from time to time, from the public funds of the said county and city, such sums as, in their judgment, may be necessary to run the James Walker Memorial Hospital in an efficient manner.

"SEC. 2. This act shall be in force from and after its ratification.

"In the General Assembly read three times, and ratified this the 7th day of February, A. D. 1907."

For the reasons stated above in respect to the 1915 Act neither the City nor the County can pay any money to support the Hospital derived from taxes, nor contract any debt, pledge their faith or loan their credit for such purpose under this Act.

Ch. 12 Private Laws 1901 is entitled "An Act to provide for the government of the James Walker Memorial Hospital of the City of Wilmington, N. C." This Act is the charter of the Hospital. In Section 3 it is stated that for the purpose of providing the proper means for sustaining the hospital, and for the maintenance and medical care of such sick and infirm poor persons as may be placed therein, the County shall annually provide $4,800.00, and the City $3,200.00, which fund shall be placed in the hands of the Board of Managers to be paid out, under their direction, according to such rules, regulations and orders as they may from time to time adopt. Section 4 of the Act provides that should any portion of this annual appropriation remain unexpended on 1 March of each year, it shall be invested in specified bonds to be known as a Permanent Fund. The income from the Fund may be used for the maintenance of the Hospital, but no part of the Fund shall be used except in case of additional emergency or for some permanent improvement or addition to the Hospital. For the reasons stated above neither the City nor the County can contract any debt, pledge its faith or loan its credit, nor can they levy any tax or collect any to support the Hospital, nor can the City or County pay any money derived from such sources to the Hospital under this Act. *Palmer v. Haywood County, supra.*

Ch. 23 Private Laws 1881 and Ch. 181 Private Laws 1881 have no application to the instant case. These Acts provided for the erection of a hospital in the City of Wilmington by the County and City. Land was bought and a building erected. The plaintiff's charter was granted by Ch. 12 Private Laws 1901. The City and County then conveyed the land upon which they had operated a hospital under the 1881 Law to the plaintiff. The plaintiff was authorized to tear down the old building. Mr. James Walker, a generous and public spirited citizen of Wilmington, North Carolina, in 1900 began the construction of a modern hospital for the plaintiff.

That part of the County's assignment of Error 3 that if the 1937, 1939 and 1951 Laws above mentioned are all unconstitutional "then the prior

acts of the General Assembly are effective to require that the appropriation for the James Walker Memorial Hospital be made one-half by the City of Wilmington and one-half by New Hanover County" is not sustained.

In a trial by the judge, as in the instant case, "the rules as to the admission and exclusion of evidence are not so strictly enforced as in a jury trial, since the judge is to determine what he will consider, and his rulings are subject to review on appeal, with all the information before the court." McIntosh N. C. Prac. and Proc., p. 553.

We have carefully considered the Hospital plaintiff's assignment of Errors Nos. 1, 2 and 3, and they are untenable. If some incompetent evidence was admitted by the trial judge, it was not prejudicial error. The findings of fact are supported by competent evidence.

The plaintiff's assignment of Error No. 5: "His Honor erred in his conclusion of law No. 4 and in the order, paragraph 3 and paragraph 4. This assignment of error is sustained upon the grounds stated above. The trial court was in error in concluding as a matter of law as it did in paragraph 4 and in adjudging as it did in paragraphs 3 and 4.

The plaintiff's Assignment of Error No. 7, which is to the signing of the judgment, is sustained, as the judgment must be modified in accordance with the opinion in this case.

The defendant County's Assignment of Error No. 1: Failure to allow its motions for nonsuit, and its conclusions of law No. 5. The assignments of error for failure to allow its motion for nonsuit are not tenable. The complaint alleges, and the evidence supports the allegations of the complaint, that this is a proper case for a Declaratory Judgment on the part of the plaintiff against both defendants. The County's assignment of error to the court's conclusion of law No. 5 is sustained for reasons set forth above in this opinion.

The defendant County's assignment of Error No. 2 is to the admission of evidence and to the findings of fact Nos. 13, 14, 18 and 19 and part of 11. This assignment of error is overruled.

The defendant County's assignment of Error No. 7 is to the signing of the judgment. This assignment of error is sustained for the judgment must be modified in accordance with the opinion in this case.

The defendant City's Assignments of Errors Nos. 1 to 12, both inclusive, are not sustained. Even if evidence technically incompetent was admitted, it was not prejudicial error.

The defendant City's Assignments of Errors Nos. 13 and 14 are to failure of the court to allow its motions for judgment of nonsuit. These assignments of error are overruled for the same reasons set forth in overruling similar assignments of error by the defendant County.

· The defendant City's Assignment of Error No. 15 is to the trial court's findings of fact Nos. 1 and 2. The defendant City's Assignment of Error No. 16 is to the trial court's findings of fact Nos. 5, 6 and 7. These findings of fact are supported by competent evidence. These assignments of error are overruled.

The defendant City's Assignment of Error No. 17 is to the trial court's findings of fact No. 8. This finding of fact is a summary of Ch. 66 Private Laws 1915 with the addition that since 1915 the said appropriations have been made by the City and County in equal amounts. It is not a finding of fact, nor a conclusion of law, nor an adjudication that the payments made to the Hospital by the City and County under this Act were either lawful, or constitutional, or required, or authorized. We have held in this opinion that this 1915 law does not require nor permit the City or County to make appropriations for the support of the Hospital. It would seem that this finding is not prejudicial error, and this assignment of error is overruled.

The defendant City's Assignment of Error No. 18 is to the trial court's finding of fact No. 20; and Assignment of Error No. 19 is to the finding of fact No. 21. These assignments of error are overruled.

The defendant City's Assignment of Error No. 24 is to the court's adjudication No. 5 taxing the costs against it and to the signing of the judgment. G.S. 1-263 provides that in a proceeding for a Declaratory Judgment the court may make such award of costs as may seem equitable and just. This proceeding is to declare rights, status and other legal relations of all the parties under a number of local Acts. All were vitally interested. It is equitable and just that the costs should be equally divided between the Hospital, the City and the County—each paying one-third, and it is so ordered   The defendant City's assignment of error taxing it with the costs is sustained. The City's assignment of error as to the signing of the judgment is sustained, for the judgment must be modified in accord with this opinion.

The defendant City's Assignment of Error No. 25 is that the trial court erred in failing to find and conclude as a matter of law, and to adjudge that the obligation to pay the cost of medical care of the indigent sick and afflicted poor rested upon the County of New Hanover. Under Art. XI, Sec. 7, of the North Carolina Constitution that duty rests upon the State. The State has neither delegated all such of its duty to New Hanover County, nor authorized it to assume all such duty. This assignment of error is not sustained.

The defendant City's Assignment of Error No. 26 is that the trial court erred in not finding and concluding that the entire obligation of the taxpayers of the City is fully met when a county-wide tax levy is made for the purpose of providing funds for the medical care of the indigent

sick and afflicted poor. The assignment of error is overruled. We know of no law to support the contention of the defendant City.

The defendant City of Wilmington in its brief cites two cases in support of its assignments of Errors Nos. 25 and 26. *Martin v. Raleigh, supra,* and *Martin v. Comrs. of Wake, supra.* Neither case supports any such contention on the part of the defendant City.

The trial court should have concluded as matters of law, and adjudicated:

1. That the defendant City of Wilmington was not estopped to challenge the constitutionality of the laws alleged in the complaint, nor had it waived any right to do so.

2. That neither Ch. 8 Public-Local Laws 1937, nor Ch. 470 Public-Local and Private Laws 1939, nor Ch. 906 Session Laws 1951 repealed any prior Acts of the General Assembly.

3. That Ch. 23 and Ch. 181 Private Laws 1881 have no application to this proceeding.

4. That Ch. 66 Public-Local Laws 1915, Ch. 38 Private Laws 1907, and Ch. 12 Private Laws 1901 provide for the defendant City of Wilmington and the defendant County of New Hanover to pay money annually to the plaintiff for its support and maintenance; that the support and maintenance of the plaintiff is not a necessary expense for the defendant City nor the defendant County, even though the money contributed should be used principally for the care of the indigent sick and afflicted poor of the City and County.

5. That there is neither allegation nor proof that an election was ever held by either the City or County on the question of the City or County paying any money to the plaintiff, and that for either the City or County to pay any money for the support and maintenance of the plaintiff is prohibited by Art. VII, Sec. 7, of the North Carolina Constitution.

Art. XI, Sec. 7, of the North Carolina Constitution provides that beneficent provision for the poor, the unfortunate and orphan is one of the first duties of a civilized and Christian State. The General Assembly may by statute, provided it is not unconstitutional, delegate a portion of its sovereignty to the governing body of any town or city or county, separately or jointly, who, when they deem it for the best interest of the town or city or county, can contract with hospitals for the medical treatment and hospitalization of the sick and afflicted poor of the town or city or county within their territorial limits. The General Assembly has enacted such a law for towns and counties. G.S. 160-229. *Martin v. Raleigh, supra.* The City of Wilmington was exempted from this law when enacted. The General Assembly has enacted a similar law for counties. G.S. 153-152. *Martin v. Comrs. of Wake, supra.* The County of New Hanover was exempted from this law when enacted. If the City of Wil-

mington and the County of New Hanover desire to contract with the James Walker Memorial Hospital for the medical treatment and hospitalization of the sick and afflicted poor within their territorial limits, they can by appropriate legislation bring themselves within the provisions of G.S. 160-229 and G.S. 153-152 or by other appropriate Acts not in conflict with the North Carolina Constitution, can assume such an obligation. However, that is a matter of public policy for the people of the City of Wilmington and the people of the County of New Hanover to decide, and not for this Court.

It is ordered that the judgment of the trial court be modified in accordance with this decision, and as modified, it is affirmed.

Modified and affirmed.

DEVIN, C. J., concurring: I concur in the opinion written for the Court by *Justice Parker,* and I am in accord with the conclusion that in this case the support and maintenance of plaintiff's hospital is not a necessary municipal expense within the meaning of Art. VII, sec. 7, of the Constitution.

However, in view of the expanding need of hospital facilities and hospital care in this State, the issue here resolved against the power of municipal corporations to levy a tax or to expend funds derived from taxation for this purpose may in the future, in a proper case, require reexamination of this question. The growing concept of public health as a matter of prime importance, invoking the exercise of governmental power, is illustrated by the statutes creating hospital authorities and the fruitful results attending the activities of the Hospital Care Commission.

The issue is not foreclosed.