164 F.Supp. 191 (1958)
Hubert A. EATON, Daniel C. Roane and Samuel James Gray, Plaintiffs,
v.
BOARD OF MANAGERS OF the JAMES WALKER MEMORIAL HOSPITAL, a body corporate; Alan A. Marshall, Chairman; H. E. Hamilton, Secretary of the Board of Managers of the James Walker Memorial Hospital; The City of Wilmington, North Carolina, Dan D. Cameron, Mayor; and the County of New Hanover, North Carolina, Ralph T. Horton, Chairman of County Commissioners, Defendants.
Civ. No. 700.
United States District Court E. D. North Carolina, Wilmington Division.
June 24, 1958.
*192 Robert R. Bond, Wilmington, N. C., C. O. Pearson, Durham, N. C., for plaintiffs.
Cicero P. Yow, Hogue & Hogue, John Bright Hill, Wilmington, N. C., for defendants.
GILLIAM, District Judge.
The instant suit is brought by three Negro doctors for themselves and for other Negro doctors, as a class, for the purpose of obtaining admission to practice medicine at James Walker Memorial Hospital on what is known as the "Courtesy Staff". The City of Wilmington and the County of New Hanover are made parties defendant in addition to the Hospital's Board of Managers and H. E. Hamilton who is Secretary of the Board. The defendants move to dismiss under Rule 12, Fed.Rules Civ.Proc. 28 U.S.C.A. for lack of federal jurisdiction. The facts of the case, as determined by pleadings and affidavits, appear to be as follows:
By virtue of Chapter 23 of the Public Laws of the North Carolina General Assembly of 1881, the City of Wilmington and the County of New Hanover were authorized to establish and maintain a hospital. Pursuant to this authorization land was acquired and the City Hospital of Wilmington became existent, subsequent expenses relating thereto being borne 40 percent by the City and 60 percent by the County.
In 1900 Mr. James Walker offered to build a modern hospital on the property then owned by the City and County and occupied by the City Hospital of Wilmington. The building used by the latter institution was removed, and construction of the new hospital was begun. The new building was finished after Mr. Walker's death and under the direction of his will.
As a result of Mr. Walker's offer, the defendant, Board of Managers of James Walker Memorial Hospital of the City of Wilmington, North Carolina, was chartered by the North Carolina legislature under Chapter 12 of the Private Laws of 1901. The purpose of this private law, as stated in its preamble, was to provide for the management of a hospital in New Hanover County and Wilmington, *193 N. C., which hospital had been built with funds provided by one James Walker to provide for the maintenance and medical care of sick and infirm poor persons who might from time to time become chargeable to the charity of the City and County, and to provide for other persons who might be admitted. The charter further provided that it was desirable, and that the purpose of the act was to remove the management of the hospital as far as possible from the vicissitudes which generally result when such an institution is left in control of local municipal authorities. The act further declared that it was the purpose to provide for the permanent maintenance of the hospital by said City and County. To this end the hospital was chartered as a body corporate with all the rights and privileges conferred upon corporations under law. The original Board of Managers of the hospital was appointed pursuant to this act. Three were elected by the Board of Commissioners of New Hanover County; two were elected by the Board of Aldermen of the City of Wilmington and four members were selected by Mr. James Walker. This board is self-perpetuating and has continued as such since its inception.
Upon the completion of the new James Walker Memorial Hospital building on July 19, 1901, the City of Wilmington and the County of New Hanover conveyed to the Board of Managers of James Walker Memorial Hospital of the City of Wilmington, N. C. a tract of land consisting of all of Block 227 of the City of Wilmington to hold "so long as the same shall be used and maintained as a hospital for the benefit of the County and City aforesaid, and in case of disuse or abandonment to revert to the said City and County as their interests respectively appear * * *." The deed specifically refers to the fact that the General Assembly has created and established a hospital under the supervision of a Board of Managers and the conveyance states that it is for the purpose of removing the management of the hospital as far as possible from the vicissitudes which generally result when such an institution is left under the control of municipal authorities. The effect of this deed was to convey to the original Board of Managers of James Walker Memorial Hospital of the City of Wilmington, N. C., a separate corporation, all of Block 227 of the City of Wilmington, N. C., which had on it a building which had been built with funds provided by the late James Walker. After the acquisition of this property additional buildings were built thereon and also an additional city block was acquired in fee simple by the Board of Managers upon which the south wing of the hospital is now located. The acquisition of the additional property was in fee simple without the restrictions set forth in the deed from the City and County.
After this conveyance was made the corporation created by the Private Law of 1901 took over the operation of the hospital. At the time of the institution of this suit none of the original members of the Board of Managers were still on the Board and no member of the City or County government is now a member of the Board or in any way in charge of the affairs of James Walker Memorial Hospital. The corporate charter gives the Board of Managers the absolute power to manage the hospital and to pass all rules and regulations necessary therefor, and since its inception the hospital has been operated, without interference or control by the City of Wilmington or New Hanover County, by its own self-perpetuating Board of Managers which have a separate corporate existence.
As was stated above, the Act of 1901 which chartered the hospital provided for funds in the annual amount of $8,000 from the City (40 percent) and County (60 percent) to maintain it. Subsequently additional acts were passed by the legislature to provide for maintenance as follows:
The Private Act of 1907, Chapter 38 of the North Carolina General Assembly, provided that annual appropriations *194 could be made from public funds of the City of Wilmington and the County of New Hanover in order that the hospital be run in an efficient manner. The Public-Local Act of 1915, Chapter 66, provided that the appropriation for the support of the James Walker Memorial Hospital should be contributed and paid in equal proportions, one-half by the City and one-half by the County, and should not be less than an annual amount of $15,000 by said City and County. The Public-Local Act of 1937, Chapter 8, provided that a minimum annual appropriation of $50,000 would be necessary to give proper medical and hospital attention to the indigent sick and afflicted poor of the City and County, and said Act authorized and directed the City and County to make such minimum appropriation to enable the hospital to properly care for the indigent sick and afflicted poor and to renew its facilities and make additions to its physical plant. The Public-Local Law of 1939, Chapter 470, authorized the City and County to enter into contracts with the James Walker Memorial Hospital and to appropriate annually a sum not to exceed the amount of $25,000 each and authorized, if necessary, an additional tax levy. The Session Laws of 1951, Chapter 906, provided for contributions of the City and County to the James Walker Memorial Hospital to be on a per diem basis for the indigent sick and afflicted poor of said City and County.
Pursuant to all of the above statutes, the City of Wilmington, North Carolina, and the County of New Hanover made payments to the hospital up to the year 1951. In this latter year the provisions of the Act of 1901 relating to financing the hospital and all subsequent acts were declared unconstitutional by the Supreme Court of North Carolina in Board of Managers v. Wilmington, 237 N.C. 179, 74 S.E.2d 749. Since 1951 funds have been paid to the hospital by the City and County under contract pursuant to Article 14A of Chapter 153, General Statutes of North Carolina, enacted in 1953. The amounts so paid are as follows:

 Receipts Receipts Total All
 City of County of Other Cash
Year Wilmington New Hanover Total Receipts Receipts
1952 $ 1,666.71 $22,482.89 $24,149.60 $ 897,912.18 $ 922,061.78
1953 None 21,672.75 21,672.75 952,847.27 974,520.02
1954 26,118.31 34,749.01 60,867.32 1,021,036.01 1,081,903.33
1955 12,945.67 33,339.73 46,285.40 1,034,859.40 1,081,144.80
1956 23,675.33 41,129.03 64,804.36 1,163,598.98 1,228,403.34
1957 1,738.00 58,533.05 60,271.05 1,352,238.51 1,412,509.56

At the present time the City does not have a contract with the hospital and in no way is a source of revenue for the same. The County, however, continues to pay according to contract for the care of indigent patients. The history of this contract and its terms are as follows:
On May 6, 1957, the County of New Hanover requested to be quoted the rates under which James Walker Memorial Hospital would undertake the care of certified indigent patients. On May 15, 1957, the hospital furnished the County of New Hanover with the following proposal:
"The hospital will accept certified indigent patients for a per diem cost of $16.00. Of course, the County in its payment may deduct the $3.00 which the hospital will receive from other agencies for MCC (Medical Care Commission) cases, or $1.00 a day for SS (Social Security) cases.
"In 1954 the hospital's per diem cost was $15.15 and the indigent *195 care cost to the County was set at $15.00. In 1955 the hospital's per diem cost was $16.40, and in 1956 it was $17.60 not including depreciation. The average per diem cost for North and South Carolina hospitals in a category with this hospital was approximately $18.00 to $19.00.
"In view of the data above, the Hospital Board of Managers feels that this rate is reasonable and will meet with your approval."
This proposal was accepted by the County and certified welfare patients are presently treated at a per diem cost of $16.
On March 19, 1955, the plaintiffs applied for "Courtesy Staff" privileges in the James Walker Memorial Hospital. The sole privileges of members of the "Courtesy Staff" is that they are allowed the use of private rooms and pay wards for their patients. Charity patients who are certified by the County are not treated by the "Courtesy Staff" members, and the "Courtesy Staff" members receive no part of the public funds which are paid for the per diem cost of treatment of charity patients. For the purpose of the instant motion, it is conceded that the applications for the "Courtesy Staff" privileges were properly made and that the plaintiffs were denied the same solely on account of their race.
On the above facts the defendants move to dismiss contending that the denial of "Courtesy Staff" privileges to the plaintiffs by the hospital is not State action within the purview of the Fourteenth Amendment, and, consequently, the litigation contains no basis for federal jurisdiction. The ultimate question, therefore, is whether the action of the hospital constituted public or private conduct. If the hospital is a private corporation, then its conduct is also private.
At the outset, it is manifest that the fact that the hospital's purpose is to promote the public interest and convenience in providing a place for the sick and afflicted does not render the hospital a public corporation. This distinction is clearly set forth in the concurring opinion of Story, J., in the case of the Trustees of Dartmouth College v. Woodard, 4 Wheat. 518, 4 L.Ed. 629:
"When, then, the argument assumes, that because the charity is public, the corporation is public, it manifestly confounds the popular, with the strictly legal, sense of the terms * * * When the corporation is said, at the bar, to be public, it is not merely meant that the whole community may be the proper objects of the bounty, but that the government have the sole right, as trustee of the public interest, to regulate, control and direct the corporation, and its funds and its franchises, at its own will and pleasure. Now such an authority does not exist in the government, except where the corporation, is in the strictest sense, public; that is, where its whole interests and franchises are the exclusive property and domain of the government itself."
And further:
"A hospital founded by a private benefactor is, in point of law, a private corporation, although dedicated by its charter to general charity. * * * It was indeed supposed at the argument, that if the uses of an eleemosynary corporation be for general charity, this alone would constitute it a public corporation. But the law is certainly not so."
Rather than the nature of its purpose or objective, the legal test between a private and a public corporation is whether the corporation is subject to control by public authority, State or municipal. Mitchell v. Boys Club of Metropolitan Police, D.C., 157 F.Supp. 101.[1] The essence of this concept is that the present ability to control carries *196 with it the responsibility for the present action of that which can be controlled.
When considering the ability to control, it must be noted that it is a composite of elements, for there are as many elements of control as there are qualities and quantities in the controlled subject. The elements must be viewed in their relationship to each other and as part of a sum total, and for this reason each case must be viewed on its merits.[2] Past contacts with connotations of control have no importance other than to explain the existing relationship. In short, the present ability to control must be determined by considering the sum total of all existing relationships between the corporation and the State.
Turning to an examination of the elements of State control as they extend to the hospital in the case at bar, it is noted that the charter of the corporation here involved was granted by the General Assembly of North Carolina pursuant to private act. This act created the corporation with its own Board of *197 Managers and with full power and authority to set forth its own rules and regulations. The express purpose of the act was to remove this corporation and the hospital which it was to operate from the politics which are connected with local City and County governments. No element of control over the corporation was retained in either the City or the County after the initial appointment of the Board of Managers. Inasmuch as no member of the Board of Managers as originally appointed is presently connected with the hospital (all of these having been replaced by persons who were elected by the self-perpetuating board), this element of control has long since expended itself. The hospital receives at present from the County only 4.27% of its income, and this money is received by virtue of contract for services performed. For the past six years money so received has amounted to an average of 4.05% of total revenue. The County has no voice in how such money shall be spent. The hospital was not created for political purposes, nor endowed with political powers. It is not an instrument of the government for the administration of public duties.
The fact that one-half of the property presently owned by the hospital was originally owned by the City and County has no bearing on present control. This Court knows of no authority which holds that the bona fide conveyance to a private corporation of public lands in turn makes a private corporation an agency of the State or creates the status of a public corporation. Indeed the conveyance was in good faith and for the very purpose of removing the City's and County's control with regard to the property. The deed clearly accomplished this purpose. The only way the City and County can claim an interest in the property or any control over the property would be in the event that the hospital ceased to be used for the care of the sick and afflicted of New Hanover County. The purpose and effect of the deed is to carry out the intent of the charter to create a public charity but not a public corporation. The City and County may eventually regain the property, but this possibility is distinctly within the control of the hospital corporation. Only the latter possesses initiative with regard to the same.
The past contributions to the hospital by the City and County under the acts of the legislature, which were later declared invalid in Board of Managers v. Wilmington, supra, are not sufficient to convert the hospital into a public corporation. Mitchell v. Boys Club of Metropolitan Police, supra. In this regard the following comment of Judge Chesnut in Norris v. Mayor and City Council of Baltimore, D.C., 78 F.Supp. 451, 460, seems appropriate:
"Counsel for the plaintiff advances a new and far-reaching proposition not within the principle of the Pratt Library Case. The contention is that whenever the State or Baltimore City as a municipal agency of the State, advances money to a private corporation of an educational nature in an appreciably substantial amount which thereby becomes mingled with other general funds of the institution, that action of the institution or City thereby becomes State action within the scope of the 14th Amendment. No authority is cited for this proposition and I know of none. In my opinion it is untenable."
In addition the past contributions do not have any relative bearing on the matter of the control of the hospital; and the possibility of any such contributions in the future has been foreclosed by judicial decision of the State of North Carolina.
In summation, the only links between the State of North Carolina and the hospital are these: 1.) the City and County have a reverter in one-half of the hospital's land should the same fail to be used for hospital purposes; 2.) the County pays at a rate provided by contract for the treatment of indigent patients. These factors do not carry with them such control as to render the hospital *198 a public corporation. The Court concludes, therefore, that the plaintiff is not entitled to the declaratory judgment prayed for because the act of discrimination did not constitute "State action". It results that for the lack of jurisdiction the complaint must be dismissed, and it is so ordered.
NOTES
[1] A private hospital is defined in 41 C.J.S. Hospitals § 1, as one "Founded and maintained by private persons or a corporation, the state or municipality having no voice in the management or control of its property or the formation of the rules for its government." By implication, The Courts of North Carolina recognize this test in Carolina-Virginia Coastal Highway v. Coastal Turnpike Authority, 237 N.C. 52, 74 S.E.2d 310.
[2] For this reason the Court will not attempt to discuss and compare at length the cases of Kerr v. Enoch Pratt Free Library of Baltimore City, 4 Cir., 149 F.2d 212, and Norris v. Mayor and City Council of Baltimore, D.C., 78 F.Supp. 451, with the instant litigation. A summary comparison, however, is as follows:

 Enoch Pratt James Walker
 Library Maryland Institute Memorial Hospital
Value of plant owned $500,000 $756,000
and used by None (Cost) (depreciated value)
Value of plant owned Leased for $500 per Land valued at $54,000.
by City but used by Over $4,000,000 year of one city City and County
 building which for have reverter only if
 commercial purposes abandoned by hospital
 would rent for $12,000 in one-half of property
 a year
Annual gross income
from property or activities
of $6,000 to $8,000 $184,000 $1,412,509.561957
Annual sums paid by $42,500 (under contract $60,271.05 (Paid under
City and State Over $800,000 for scholarships) contract for indigents
 for services
 rendered)1957
Proportion of public 99% About 23% (under About 4.6% (under
funds received to contract) contract)
total budget
Public status of employees Included in municipal None None
 employees retirement
 system
Control of disbursements Made through City None None
by city Bureau of Control
 and Accounts on
 vouchers submitted by
 Trustees
Salary checks for Issued by City Payroll None None
employees Officer
Salary of employees Conform to City salary None None
 schedule
Control of Budget Submitted to municipal None None
 budget authorities