CHEMICAL BANK v. HENDERSON BELK

No. 7826SC580

(Filed 5 June 1979)

1. **Mortgages and Deeds of Trust § 6— language in note and deed of trust—incorporation by reference**

   Where a note and deed of trust cross-refer to each other and incorporate each other by reference, and only one of the documents clearly indicates the purchase money nature of the transaction, the other document may be deemed to include the same language indicating the nature of the transaction.

2. **Mortgages and Deeds of Trust § 32.1— anti-deficiency judgment statute—no waiver of protection**

   The protection of the anti-deficiency judgment statute, G.S. 45-21.38, cannot be waived since that statute was designed for the benefit of the general public and was not intended to be merely a right which could be waived or which purchasers could be compelled to waive as a prerequisite for obtaining financing.

3. *Mortgages and Deeds of Trust § 32.1—* **anti-deficiency judgment statute—no estoppel to assert**

   Execution of an "estoppel certificate" by defendant did not deprive him of his right to assert G.S. 45-21.38 in his defense to a deficiency proceeding, since a purchaser cannot, by his action or by contract, deny to himself the protection afforded him by the legislature in its enactment of the anti-deficiency statute; moreover, even if the certificate did operate as an estoppel so as to bar defendant's assertion of the statute, plaintiff could not base a claim of estoppel thereon, since the certificate was never transferred to successive assignees and therefore was never assigned to plaintiff, and since there was no evidence of record to indicate that plaintiff in any way knew of the certificate or had any reliance upon it.

**4. Mortgages and Deeds of Trust § 32.1 — purchase of property by defendant guarantor — obligations merged — protection of anti-deficiency statute**

  Defendant's guaranty of the obligations of a corporation under a lease/purchase agreement did not remove him from the protection of the anti-deficiency statute and make him liable for the entire face amount of a note, since the option to purchase was assigned to defendant personally; defendant exercised it, taking title to the property in himself and personally signing the note and deed of trust; and all of the obligations and promises merged in defendant who became an ordinary purchaser who financed his acquisition of the property by a purchase money note and deed of trust.

APPEAL by defendant and cross-appeal by plaintiff from *Thornburg, Judge.* Judgment entered 22 February 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 9 March 1979.

Plaintiff brought this civil action for declaratory judgment, pursuant to G.S. § 1-253 *et seq.*, seeking a declaration of its rights and liabilities under G.S. § 45-21.38, which statute purports to abolish deficiency judgments on a mortgage where that mortgage represented a portion of the purchase price of the security. Plaintiff is the current holder of a note, secured by a deed of trust, executed by defendant as the balance purchase money on the sale and conveyance of certain real proeprty in Charlotte, North Carolina.

On 9 February 1968 Charlotte Venture Corporation, a New York corporation and subsidiary of Realty Equities Corporation also of New York, leased the Barringer Hotel (later named the Cavalier Inn) to the Belk Hotel Corporation with an option to purchase. Defendant Henderson Belk was the president and sole stockholder of Belk Hotel Corporation. Charlotte Venture Corporation assigned its lessor's interest in the lease on 11 September 1968 as security for a loan from Nyhaco Credit Corporation, Ltd., a Canadian corporation with offices in New York City.

Belk personally guaranteed the performance of the lease by the Belk Corporation through the terms of a written guarantee agreement. The lease guarantee provided:

  Whereas, the lessor has refused to enter into the said lease unless the guarantor guarantee said Lease in the manner hereinafter set forth,

Now, therefore, to induce the lessor to enter into said lease . . . the guarantor hereby agrees:

1. (a) The guarantor unconditionally guarantees to the lessor and the successors and assigns of the lessor the full and punctual performance and observance, by the lessee, of all the terms, convenants and conditions of said lease on the lessee's part to be kept, performed and observed.

At the time the lease was signed, Belk delivered to Charlotte Venture a letter agreeing to provide to it certification from his accountant that he had a net worth in excess of $5,000,000 or Charlotte Venture could cancel the lease.

Belk Hotel Corporation fell into arrears on its lease payments. To avoid legal action it was decided that the option to purchase should be exercised. On 31 January 1970, Charlotte Venture Corporation contracted to sell the Barringer Hotel to Belk Hotel Corporation with Henderson Belk personally guaranteeing the transaction. The contract was prepared by Charlotte Venture. It provided for its assignment from Belk Hotel Corporation to Henderson Belk, individually. The purchase agreement provided, *inter alia*, that:

(1) Henderson Belk, individually, joined in the Purchase Agreement for the purpose of guaranteeing its performance by Belk Corporation and the payment of the Note for the balance of the purchase price.

(2) The Purchaser reserved the right to assign the Purchase Agreement to another corporation or to Henderson Belk, individually. "However, in all respects the above guarantee, and agreement to guarantee, shall remain in full force and effect."

A rider was attached to the purchase agreement which provided, in paragraph 2, the following:

2. As a condition for the acceptance of the purchase money note and mortgage by the Seller herein, it is agreed that Henderson Belk, the guarantor of said indebtedness, shall deliver to the Seller, at the closing of the transaction, a letter from Mr. Nat Howard, Certified Public Accountant, on the staff of Belk Stores Services, Inc., that shall contain the same terms with reference to the net worth of Henderson Belk,

as of the date of closing of this transaction, as were contained in letter to such effect that was delivered by Henderson Belk to the Seller at the time the lease by and between the parties was entered into, dated February 9, 1968.

The sale of the Barringer Hotel property was consummated on 10 March 1970, between Charlotte Venture Corporation (vendor) and Henderson Belk, individually (vendee). The transaction was structured thusly: Belk Hotel Corporation assigned its contract of sale with Charlotte Venture to Henderson Belk individually on 10 March 1970. Nyhaco Credit Corporation on the same date assigned the lease wherein Belk Hotel Corporation was lessee back to Charlotte Venture. Charlotte Venture also on the same date assigned the lease to Henderson Belk. Charlotte Venture then deeded the hotel property to Henderson Belk, in return for which Belk paid a consideration of $1,850,000.00 in the form of $100,000 cash and the balance in a note for $1,750,000 secured by a deed of trust on the hotel property.

The contract called for the $1,750,000 non-cash balance to be paid by "the execution of notes and deeds of trust evidencing a balance purchase money mortgage . . ." Sol Levine of Charlotte, North Carolina, and attorney for Charlotte Venture prepared the note and deed of trust. The note was in the standard form of a negotiable promissory note and referred to the deed of trust securing payment as follows:

This Note is secured by a deed of trust of even date herewith to Sol Levine, Trustee conveying real estate in Mecklenburg County, North Carolina.

The deed of trust stated on its face that it was "for balance purchase money" in the sum of $1,750,000. Levine was named as trustee.

Henderson Belk executed an "Estoppel Certificate and Certificate of Compliance" to Nyhaco Credit Corporation, Ltd., as part of the transaction 10 March 1970 whereby Charlotte Venture assigned to Nyhaco its interest in the Belk note and deed of trust as security for a loan made to Charlotte Venture by Nyhaco. The estoppel certificate stated that:

. . . in order to induce Nyhaco Credit Corporation, Ltd., to take an assignment of said purchase money first Deed of

Trust and Note secured thereby and thus to enable the assignment of the purchase money first Deed of Trust and Note to be made to and accepted by Nyhaco Credit Corporation, Ltd., (Henderson Belk) does hereby certify to Nyhaco Credit Corporation, Ltd., for a valuable consideration by the undersigned received:

\*     \*     \*

3. There are no defenses, counterclaims or offsets to the above mentioned deed of trust or to the Note secured thereby.

On 12 August 1970, Nyhaco assigned the note and deed of trust to Realty Equities Westchester Corporation who, like Charlotte Venture, was a subsidiary of Realty Equities Corporation. On 19 August 1970, Realty Equities Westchester Corporation assigned the note to Royal National Bank as security for a loan to Realty Equities Corporation. On 31 December 1970, Realty Equities Westchester, its parent, Realty Equities Corporation, and Royal National Bank entered into an agreement by which Realty Equities Westchester, denominated as the "owner and holder of the note," agreed to sell to Royal National the Belk note and deed of trust for $1,400,000 with the proceeds being applied to reduce the parent's, Realty Equities Corporation, outstanding indebtedness to Royal National.

On 15 May 1972 Royal National Bank merged with Security National Bank of New York with the assets of Royal National Bank merged into those of Security National. William R. Hadley, senior vice-president of Security National Bank (later a vice-president of Chemical Bank), was in charge of the Belk note and deed of trust and was aware they had been given for balance of purchase price on real estate.

Belk was continuously delinquent on the payment of the note and received frequent notices from the holder that payments were due thereon. The last payment was made by Belk on 22 May 1974. From the period of 22 May 1974, through January of 1975, Belk received delinquency notices that the payments were due. In addition, he received telegrams calling upon him to make payment. He did not respond to the telegrams. He was apprised weekly of the situation. No efforts were made by him to contact

Security Bank or to cure the default. Belk Corporation did not have in its account sufficient funds to pay the delinquency. No efforts were made by Belk to obtain funds to make this payment.

Security Bank sent a telegram to Belk on 19 July 1974, demanding that payments be made on the May, June and July arrearages. Belk never responded to these telegrams.

On 31 December 1974, Security National engaged the services of Henry N. Pharr, II, a Charlotte attorney, for the purpose of instituting foreclosure proceedings against Belk who was at that time delinquent in its payments on the note. Pharr was substituted as trustee in place of Sol Levine.

On 15 January 1975 Pharr, without prior notice to Belk, instituted foreclosure proceedings by posting notice of sale at the courthouse on 15 January 1975 and caused legal ads to be run in the Charlotte Observer beginning 19 January 1975. The sale was set for 17 February 1975.

On 19 January 1975 substantially all the assets and liabilities of Security National Bank were sold to plaintiff, Chemical Bank, in a bulk transfer pursuant to an emergency declared by the U. S. Comptroller of Currency.

The transfer from Security to Chemical involved over a billion dollars in assets with an apparent net book value of $120,000,000 to $140,000,000. Chemical Bank paid approximately $50,000,000 for these assets. The Belk note and deed of trust were placed on the books and records of Chemical Bank at a value of approximately $750,000.

On 23 January 1975, a representative of Belk tendered a deed to the hotel property to Chemical. It was refused. On 1 February 1975 Belk closed the hotel in the face of continued publication of foreclosure in the newspaper, plaintiff's refusal of defendant's tender of deed and plaintiff's refusal to answer defendant's inquiry as to what should be done with the hotel business operating on the premises.

On the sale date, 17 February 1975, the trustee postponed the sale for one week under instructions from Chemical, alleging as grounds the opportunity for additional bidders to examine the property and secure a better sales price. The trustee petitioned and secured a court order for this postponement.

On 24 February 1975, the second scheduled sale date, the trustee withdrew the property from sale without offering it for bids and without inquiring of the persons present if any were interested in bidding on the property. No court order was obtained for this action.

Defendant contended in the trial court that plaintiff was barred from suing on the note because of the initiation of foreclosure proceedings (constituting an election of remedies) and because of G.S. § 45-21.38. Defendant also contended that plaintiff had wrongfully, willfully, recklessly and without regard for the defendant's rights under the deed of trust instituted foreclosure proceedings and thereby damaging defendant and entitling him to recover from the plaintiff. Plaintiff contended that G.S. § 45-21.38 did not apply for several reasons (citing theories of waiver, estoppel, guaranty) and further argued that it had not made an election of remedies by instituting foreclosure proceedings and that the institution and withdrawal of foreclosure proceedings was not wrongful or in any way detrimental to defendant.

Upon the foregoing facts and contentions, the trial court, by order dated 22 February 1978, made the following declarations and conclusions of law:

1. The plaintiff has a legal interest in the Note and Deed of Trust and standing to bring this action.

2. The plaintiff's complaint constitutes a proper claim for declaratory judgment and the court has jurisdiction to render a declaratory judgment with respect to the questions set forth in the complaint.

3. The court declares as a matter of law the following:

(a) G.S. Sec. 45-21.38 of the North Carolina General Statutes does not apply to the Note and Deed of Trust.

(b) The plaintiff is entitled to bring an action against the defendant to obtain judgment on the Note, which action and judgment would not constitute an election of remedies that would prevent the plaintiff from simultaneously or subsequently foreclosing the Hotel under the Deed of Trust.

(c) The plaintiff has not completed a foreclosure sale of the Hotel under the Deed of Trust through the commencement of the foreclosure proceeding by ·Security Bank and the plaintiff's subsequent withdrawal of that proceeding. The plaintiff has not elected its remedies through the commencement and withdrawal of the foreclosure proceeding, and it is not thereby precluded from suing on the Note and simultaneously or subsequently foreclosing the Hotel under the Deed of Trust.

The court then denied defendant's motion to dismiss, declared the rights of the parties to be as set out above, and denied all parties' motions for summary judgment without prejudice. As the allegations and prayers for relief of plaintiff's complaint, and defendant's responses to same, had been made tentatively and *in limine* pending the outcome of the declaratory judgment proceeding, both parties were given additional time to replead the action, and to reassert such motions for summary judgment as would be proper to the posture of the action. From this order, defendant appeals, assigning error.

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by Mark R. Bernstein, Fred T. Lowrance, and J. William Porter, for the plaintiff.*

*Weinstein, Sturges, Odom, Bigger, Jonas & Campbell, by Maurice A. Weinstein, T. LaFontine Odom, and L. Holmes Eleazer, Jr., for the defendant.*

MARTIN (Robert M.), Judge.

We note at the outset that, according to an addendum to the record filed by the parties, the property in question has been sold by mutual consent of the parties, mooting any discussion of foreclosure on these facts. We also have noted the opinion of our Supreme Court in *Ross Realty Co. v. Trust Co.*, 296 N.C. 366, 250 S.E. 2d 271 (1979), reversing the ruling of this Court in the same case at 37 N.C. App. 33, 245 S.E. 2d 404 (1978). Under *Ross Realty*, it is clear that where a mortgage or deed of trust is executed by a vendee to secure to the vendor the balance of the purchase price of real property, the vendor is limited, in the event of default by the vendee, to the security and may not sue upon the note. Accordingly, in the case before us, if the note sued upon is

determined to be a purchase money note, plaintiff's recovery will be limited to the proceeds identifiable under the sale of the hotel property. Therefore, the principal question for our review is whether the trial judge ruled correctly when he determined that G.S. § 45-21.38 did not apply to the instant transaction. We conclude that he did not rule correctly and reverse the order entered below.

Plaintiff vigorously contends that the anti-deficiency statute is not applicable to this transaction for several reasons. First, plaintiff argues that the note executed by defendant was not marked as a "purchase money note" and therefore does not conform to the statutory prerequisites for asserting G.S. § 45-21.38 as a defense. Second, plaintiff contends that its rights are as those of a holder in due course, and that therefore no defenses to the note may be asserted against it. And third, plaintiff contends that defendant, through his actions, has waived the protection of the statute and is estopped from asserting it as a defense.

Defendant controverts all of these assertions by plaintiff, contending that the note was adequately identified as a purchase money note, that no holder in due course status may be found to exist on plaintiff's part, and that he has not waived or by his conduct estopped himself from asserting the benefits and protection of the anti-deficiency statute; he argues further that the very nature of N.C. Gen. Stats. § 45-21.38 prevents any waiver or estoppel from effectively acting to remove him from its protective umbra. Defendant also contends that the second proviso of the statute (which makes a seller liable for any deficiency judgment recovered against a purchaser where the instruments evidencing and securing the debt were prepared under the seller's supervision, the instruments secured what in fact was a purchase money obligation, and the identifying notation of "Purchase Money" was not included on the face of the instruments) will make plaintiff liable for any deficiency in any event, even if the note is determined not to be a purchase money note, since the seller (Charlotte Venture Corp.) caused to be prepared all of the instruments pertinent to the transaction now before us and the protection of the second proviso of the statute is applicable to the assignees of the seller.

[1] It is a long-standing rule governing related written instruments executed contemporaneously that they are to be con-

sidered as one instrument and are to be read and construed as such to determine the intent of the parties, provided the instruments are not contradictory. This rule is applicable to notes and deeds of trust. *See generally* 11 Am. Jur. 2d Bills and Notes, § 70; 55 Am. Jur. 2d Mortgages, § 176. This proposition has been supported in North Carolina. *See Frye v. Crooks,* 258 N.C. 199, 128 S.E. 2d 257 (1962) (holding that cross-reference from note to deed of trust and vice versa were sufficient to incorporate due date from deed of trust into note); *Gambill v. Bare,* 32 N.C. App. 597, 232 S.E. 2d 870, *rev. denied,* 292 N.C. 640, 235 S.E. 2d 61 (1977) (suggesting that purchase money nature of debt may be shown on either note or deed of trust). In view of the liberality of interpretation that our Supreme Court has indicated to be appropriate in effecting the Legislature's intent in enacting N.C. Gen. Stats. § 45-21.38, we hold that where a note and deed of trust cross-refer to each other, and incorporate each other by reference, and only one of the documents clearly indicates the purchase money nature of the transaction, the other document may be deemed to include the same language indicating the nature of the transaction. Therefore, nothing present or absent from the face of the note now before us will serve to block the applicability of N.C. Gen. Stats. § 45-21.38 to it.

Having thus determined that the provisions of N.C. Gen. Stats. § 45-21.38 are applicable to the note, we must determine if any of the actions or conduct of the defendant will serve to remove him from its protection. Plaintiff has contended that, even should the statute otherwise be found applicable, application of it to the specific facts before us would be improper, citing theories of waiver, estoppel and guaranty. We do not agree and find, for the reasons stated below, that defendant has not removed himself from the protective umbra of the anti-deficiency judgment statute.

[2]   We are of the opinion that the benefits of this statute cannot be waived. As interpreted by our Supreme Court in *Ross Realty,* it effects the broad public purpose of abolishing deficiency judgments in purchase money transactions if foreclosure on the security yields an insufficient fund to satisfy the indebtedness secured. The protection it offers is afforded to all purchasers of realty who secure any part of the purchase price with a deed of trust on the realty they are purchasing. We are persuaded that

this protection was enacted as an expression of public policy by the 1933 General Assembly. Considering the depressed state of the economy at that time, and also looking to the chaos which could have occurred upon the wholesale foreclosure of deeds of trust followed by executions upon deficiency judgments, leaving a potentially substantial group of purchasers without their land or adequate general assets to subsist, we have no difficulty in concluding that the protection of the anti-deficiency judgment statute was designed for the benefit of the general public and was not intended to be merely a right which could be waived (or which purchasers could be compelled to waive as a prerequisite for obtaining financing). We are buttressed in our conclusion by our Supreme Court's analysis of the intent of N.C. Gen. Stats. § 45-21.38 in *Ross Realty,* and also by our careful study of an article quoted in that opinion, Currie and Lieberman, *Purchase-Money Mortgages and State Lines: A Study in Conflict-of-Laws Method,* 1960 Duke Law Journal 1. As to waiver of benefits conferred by statutes designed to protect public interests, the law is well settled. Ordinarily, effect will not be given to an attempted waiver of a protective public policy by an individual. "A waiver is not . . . allowed to transgress public policy or morals." *Memorial Hospital v. Wilmington,* 237 N.C. 179, 190, 74 S.E. 2d 749, 757 (1953). *Also see generally* 28 Am. Jur. 2d *Estoppel and Waiver* §§ 161 and 164; *3 Powell on Real Property,* § 474 at 696.55. *Ector v. Osborne,* 179 N.C. 667, 103 S.E. 388 (1920), cited by plaintiff, is wholly distinguishable on its facts and is simply not applicable. Waiver by implication is not looked upon with favor by the courts; in fact, every reasonable intendment will be indulged against the waiver of fundamental rights, the courts never presuming acquiescence in their loss. *See* 28 Am. Jur. 2d *Estoppel and Waiver,* § 173; *c.f. Bunn v. Braswell,* 139 N.C. 135, 51 S.E. 927 (1905). We find no express waiver of the statute's protection anywhere in the record; nor do we find any facts of record sufficient to imply such a waiver. Even if an attempted waiver could be said to exist, however, it would be void notwithstanding the form it was in because we conclude that the allowance of any waiver would defeat the legislative purpose of N.C. Gen. Stats. § 45-21.38 and would attempt, by private action of parties, to confer upon the courts that jurisdiction over the question that was expressly taken away by the enactment of the statute. *See Bullington v. Angel,* 220 N.C. 18, 16 S.E. 2d 411 (1941). We therefore

sustain defendant's exceptions to this portion of the trial court's order.

[3] For many of the same reasons that the statute's protection may not be waived, the doctrine of estoppel will not deprive defendant of his right to assert N.C. Gen. Stats. § 45-21.38 in his defense to a deficiency proceeding. Were a purchaser able, either by his action or by contract, to deny to himself the protection afforded him by the legislature, it would be to allow by indirection that which was directly forbidden. Plaintiff contends that the "estoppel certificate" executed by defendant to Nyhaco denies him the privilege of asserting *any* defense to the note. That certificate provided, in pertinent part, that "there [were] no defenses, counterclaims or offsets to the above mentioned deed of trust or note secured thereby [the purchase money note and deed of trust being the same which are the crux of this litigation]." It was signed by Henderson Belk personally. The instrument twice refers to the "purchase money deed of trust and note." As to many possible defenses which might ordinarily be asserted to a suit on a note, no doubt this certificate would be an efficacious bar. However, in order to avoid the frustration of the intent of the legislature in enacting the anti-deficiency statute as it has been heretofore construed by our courts, we hold that such a writing will not operate as an estoppel so as to bar its assertion.

Additionally, there appear no grounds of record upon which to base a claim of estoppel in favor of plaintiff in any event. The certificate referred to clearly gave notice as to the purchase money nature of the transaction. Unlike the note and deed of trust, the certificate was never transferred to the successive assignees, stopping in the chain of assignments at Nyhaco. There is absolutely no evidence of record to indicate that plaintiff in any way knew of the certificate or had any reliance upon it. It has always been the law of this State that an essential element of provable estoppel is the "reliance upon the conduct of the party sought to be estopped." *Hawkins v. Finance Co.*, 238 N.C. 174, 178, 77 S.E. 2d 669, 672 (1953). Plaintiff's answers to interrogatories submitted by defendant show that plaintiff was simply unaware of the existence of the certificate at the time it acquired the note and deed of trust executed by defendant. We find no authority for the proposition that such an estoppel in favor of the holder of the note would be transferred to successive purchasers

of the note; the authority cited by plaintiff (derived chiefly from cases involving covenants and questions of title to real property in a chain of conveyances) is not applicable. Accordingly, we conclude that no estoppel operates to preclude defendant from asserting the defense of the anti-deficiency statute.

[4]  Finally, we consider whether defendant's guaranty of the obligations of Belk Hotel Corporation under the lease/purchase agreement will take him out from under the protection of the anti-deficiency statute, making him liable for the entire face amount of the note. A guaranty is defined as the promise of one person (or entity) to answer for the debt of another. So long as the Belk Hotel Corporation retained the rights and interests under its agreement with Charlotte Venture, Belk's guaranty would operate to make him personally liable for the obligation of the corporation, and his promise to pay would be independent of and in addition to the promises made by Belk Hotel Corp. *See Southern National Bank of North Carolina v. Pocock,* 29 N.C. App. 52, 223 S.E. 2d 518; *certiorari denied* 290 N.C. 94, 225 S.E. 2d 324 (1976). However, when the option to purchase was assigned to Belk personally and he exercised it, taking title to the hotel property in himself and personally signing the note and deed of trust, there was no longer any "other" whose obligation was being guaranteed; all of the obligations and promises merged in defendant who became an ordinary purchaser of realty who financed his acquisition of the property by a purchase money note and deed of trust. Defendant, having executed the note and proffered security for it, had made all the "guaranty" of the indebtedness he was able or required to do. Although the lease and option to purchase agreement contained language that would hold defendant to his guaranty contract even though the lease and option agreement were assigned, logically that language would contemplate only assignments to persons or corporations other than defendant, since, as stated above, the extent to which an individual can "guarantee" his own obligation is defined by the ordinary rules applicable to vendor and purchaser. Therefore, N.C. Gen. Stats. § 45-21.38 remains applicable. (Arguably, defendant could have asserted the statute in defense to a suit on the guaranty even if he had not taken title and executed the note personally, in that Belk Hotel Corporation (or any other person) as purchaser would have the same rights under the statute as he does and

even a guarantor could likely assert that defense. *See Trust Co. v. Dunlop*, 214 N.C. 196, 198 S.E. 645 (1938)).

Defendant's appeal from the denial of his motion for summary judgment on his tenth defense and counterclaim, asking for a set-off equivalent to any deficiency determined to be recoverable by plaintiff (pursuant to the second proviso of N.C. Gen. Stats. § 45-21.38, which provides:

> . . . further, that when said note or notes are prepared under the direction and supervision of the seller or sellers, he, it, or they shall cause a provision to be inserted in said note disclosing that it is for puchase money of real estate; in default of which the seller or sellers shall be liable to purchaser for any loss which he might sustain by reason of the failure to insert said provisions as herein set out.)

is made moot by our holding above, and we therefore do not consider it.

Plaintiff's cross-appeal from the denial of its motion for summary judgment on defendant's eleventh defense and counterclaim (which sought recovery for plaintiff's wrongful termination of foreclosure of the hotel property) and defendant's appeal from denial of his motion for summary judgment on the same defense and counterclaim are interlocutory and are therefore dismissed. *See Stonestreet v. Motors, Inc.*, 18 N.C. App. 527, 197 S.E. 2d 579 (1973); *Motyka v. Nappier*, 9 N.C. App. 579, 176 S.E. 2d 858 (1970).

The order of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges MITCHELL and WEBB concur.