JOSEPH E. SMITH, GEORGE V. SMITH, NICKOLAS W. SMITH, JESSE B. SMITH AND ANNIE SMITH, PLAINTIFFS v. STUART R. CHILDS, DEFENDANT

No. 9126SC1224

(Filed 7 December 1993)

1. **Pleadings §§ 375, 401 (NCI4th)— amendments to complaint— after evidence introduced—no abuse of discretion**

The trial court did not abuse its discretion in a legal malpractice action by allowing plaintiffs' motion to amend their pleadings where plaintiffs went to trial upon their previously amended complaint alleging negligence in defendant's failure to advise them of the legal implications of a contract to purchase real estate, a promissory note and purchase money deed

of trust, and a subordination agreement, and the court allowed their motion at the close of plaintiffs' evidence to add further allegations of negligence. One of the new issues was sufficiently pled in the complaint, and defendant impliedly consented to trial on the remaining new issues because evidence supporting those issues did not tend to support any properly pled issue and defendant never specifically objected to that evidence as being outside the scope of the pleadings. Moreover, defendant suffered no prejudice in that defendant moved for a directed verdict on the allegations in the complaint and the additional contentions "that are not alleged" before plaintiffs moved to amend, and thus understood that additional issues were being raised. N.C.G.S. § 1A-1, Rule 15(b).

**Am Jur 2d, Pleading §§ 319-331.**

2. **Evidence and Witnesses §§ 2150, 2152 (NCI4th)— legal malpractice—expert opinion testimony—permissible scope**

The trial court erred in a legal malpractice action by allowing plaintiffs' expert to testify as to legal conclusions regarding a purchase money deed of trust and personal guaranties. While legal experts may testify regarding the factual issues facing the jury, they are not allowed to either interpret the law or to testify as to the legal effect of particular facts. Expert testimony here that language in a purchase money deed of trust did not provide plaintiffs with adequate protection in the event of subordination should have been excluded because the expert was allowed to give his interpretation of the contract; furthermore, the expert should not have been allowed to give his individual interpretation of N.C. law on personal guaranties.

**Am Jur 2d, Expert and Opinion Evidence §§ 47 et seq., 136 et seq.**

3. **Damages § 49 (NCI4th)— legal malpractice—purchase money deed of trust and personal guaranty—mitigation of damages**

The trial court did not err by denying defendant's motions for judgment n.o.v. and directed verdict in a legal malpractice action where defendant alleged that the proximate cause of plaintiffs' losses was plaintiffs' failure to enforce either a note or a personal guaranty. Defendant's argument is actually based on an alleged failure to mitigate damages, but a reasonable

person would have concluded at the time of the default that an attempt to enforce the purchase money note or the personal guaranty would be unsuccessful. N.C.G.S. § 45-21.38.

**Am Jur 2d, Damages §§ 492 et seq.**

4. **Damages § 151 (NCI4th)— legal malpractice—damages—instructions—exclusive nature of injuries**

The trial court erred in its instructions on damages in a legal malpractice action involving a purchase money deed of trust and personal guaranty by instructing the jury that the damages recoverable would include the fair market value of the subject property at the time of the hypothesized foreclosure sale, less the expenses of the foreclosure proceedings. The instructions were erroneous because plaintiffs' claim was based on several alleged acts of negligence and the instructions did not present the proper measure of damages under one of the theories; the jury was not instructed on the exclusive nature of the theories; and the jury was not charged to consider monies plaintiffs actually received from the sale of their land. Although the remand would ordinarily be solely on the issue of damages, the errors make it impossible to determine the allegation upon which the jury ultimately based its verdict and the remand was for a new trial.

**Am Jur 2d, Damages §§ 988 et seq.**

Appeal by defendant from judgment entered 2 September 1991 by Judge Dexter Brooks in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 November 1992.

*Griffin, Caldwell, Helder & Lee, P.A., by Thomas J. Caldwell and R. Kenneth Helms, Jr.; and Walker & Walker, by John G. Walker, for plaintiff-appellees.*

*Bailey & Dixon, by Gary S. Parsons, Alan J. Miles and Lauren A. Murphy; and Jones, Hewson & Woolard, by Harry C. Hewson and Kenneth H. Boyer, for defendant-appellant.*

JOHN, Judge.

In this legal malpractice action, defendant appeals a judgment finding him negligent and ordering him to pay plaintiffs $900,000. Defendant contends the trial court erred (1) by allowing plaintiffs

to amend their previously amended complaint; (2) by allowing plaintiffs' expert witness to testify to certain legal conclusions; (3) by failing to determine plaintiffs were entitled to a deficiency judgment against the debtor based upon the underlying land transaction; (4) by denying his motion for a directed verdict on the issue of damages; (5) by failing to instruct on the proper measure of damages; and (6) by refusing to accept the jury's original verdict. We agree in part and remand for a new trial.

The evidence presented at trial tended to show the following: around 1980 plaintiffs inherited a twelve acre tract of land located on U.S. Highway 29 in Mecklenburg County. Shortly thereafter, several persons contacted plaintiffs and expressed an interest in purchasing this property.

At some point, plaintiffs entered into negotiations with J. W. Wood (Wood). Plaintiffs and Wood reached provisional accord on a purchase price for the property and thereafter plaintiffs retained defendant as legal counsel to represent them. Plaintiffs informed defendant the following terms had been tentatively agreed upon: (1) a purchase price of $710,000, of which plaintiffs were to receive $10,000 as earnest money, $100,000 at closing, and a $600,000 promissory note secured by a purchase money deed of trust; and (2) payments on the note were to be made in five equal annual installments.

Defendant thereafter entered into formal negotiations with Wood, secured some additional terms favorable to plaintiffs (including a higher interest rate), and on 28 December 1984 plaintiffs executed a land sale contract to convey the property. At closing on 16 May 1985, the purchasers (Wood, Marc Birnbaum and Uri Sheinbaum) executed a promissory note and a purchase money deed of trust. The promissory note provided for five annual installments of $120,000 and a 12.5% annual interest rate. The deed of trust described the property as being divided into two tracts, Tract 1 of 12.08 acres and Tract 2 of .04 acres. The deed of trust instrument also contained the following provision:

> [T]he Grantor shall have the right and power by itself without the signature, approval or consent of either the Beneficiary or Trustee to subordinate the lien created by this Deed of Trust to any first lien or liens for any of the purposes described above [for development loans, construction loans, permanent financing, or otherwise], provided such liens do not exceed

$8,000,000 . . . and . . . the Grantor has . . . delivered to Beneficiary a guaranty of payment . . . .

The first installment was not paid when due and defendant wrote Wood, stating he had fifteen (15) days to cure the default. This was not done, but, after consulting defendant, plaintiffs agreed: (1) to subordinate their purchase money deed of trust to a deed of trust held by First Federal Savings & Loan of Laredo, Texas (First Federal) which secured a $380,000 loan to Wood; and (2) to receive a personal guaranty from Wood for the full amount of the promissory note. Thereafter, on 18 June 1986, plaintiffs received the first installment (due on 15 May 1986) with interest totalling $207,753.42.

In May 1987, the purchasers again defaulted and Wood also defaulted on the First Federal loan. Defendant thereafter wrote plaintiffs recounting these events and advising "you may wish to have another lawyer look at this letter . . . ." In November 1987, First Federal foreclosed and purchased the property for $430,226 — the amount outstanding on its note plus the costs of foreclosure. Plaintiffs neither participated in these foreclosure proceedings nor received any monies thereunder.

After employing new counsel, plaintiffs filed a complaint (and later an amended complaint) alleging defendant had been negligent in giving legal advice throughout the land transaction. The case went to trial and at the close of plaintiffs' evidence, the trial court allowed plaintiffs to amend their amended complaint. Ultimately, the jury returned a verdict finding defendant negligent and awarding plaintiffs $480,000 "with interest to date at 13.5% plus total attorney fees and court costs." Over defendant's objections, the verdict sheet was returned to the jury for further deliberations which resulted in a verdict of $900,000.

I.

[1] Defendant argues the trial court erred by allowing plaintiffs to amend their previously amended complaint. We disagree.

Plaintiffs proceeded to trial upon their amended complaint (the complaint) charging defendant with negligence in failing to advise plaintiffs of the legal implications of (1) the 28 December 1984 contract to purchase, (2) the 16 May 1985 promissory note and purchase money deed of trust, and (3) the 6 June 1986 subordination agreement, as well as failing to advise them properly in (4) his

26 June 1987 letter. At the close of plaintiffs' evidence, the parties made several motions. In reliance upon the applicable statute of repose, the court granted defendant's motion for a directed verdict on all allegations concerning matters leading to the execution of the promissory note and deed of trust. However, the court also allowed plaintiffs' motion to amend their complaint in order to allege the following:

The defendant was negligent in that he:

(a) Failed to advise and inform the plaintiffs that at the time the purchase money note and deed of trust were in default that plaintiffs had the absolute right to foreclose their deed ·of trust thereby getting their property back or receiving the balance owed them in the event some party out bid them and/or to negotiate the terms of the original sale, including renegotiation of the subordination provision;

(b) Failed to advise and inform the plaintiffs that they clearly were not required to subordinate as required by the Contract of Sale and purchase money deed of trust;

(c) Failed to advise and inform the plaintiffs of the continuing inherent risks of the transaction as structured in the Contract of Sale and in the Purchase money deed of trust;

(d) Failed to require that the proceeds from the $380,000 loan to which the plaintiffs subordinated be used to improve the property.

In pertinent part, N.C.R. Civ. P. 15(b) allows for amendment of the pleadings and provides: "[w]hen issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Implied consent exists when evidence in support of an unpleaded issue is introduced and the opponent fails *to object specifically* to this evidence as being outside the scope of the pleadings. *Eudy v. Eudy*, 288 N.C. 71, 76, 215 S.E.2d 782, 786 (1975), *overruled on other grounds*, *Quick v. Quick*, 305 N.C. 446, 290 S.E.2d 653 (1982); *Mobley v. Hill*, 80 N.C. App. 79, 81, 341 S.E.2d 46, 47-48 (1986). Under modern practice, amendments should be freely allowed. *Mobley v. Hill*, 80 N.C. App. at 81, 341 S.E.2d at 47.

While Rule 15(b) has the practical effect of repealing the former strict rule against variance, it does not permit judgment by ambush.

*Eudy v. Eudy*, 288 N.C. at 76, 215 S.E.2d at 786. "Where the evidence which supports an unpleaded issue also tends to support an issue properly raised by the pleadings, no objection to such evidence is necessary and the failure to object does not amount to implied consent to try the unpleaded issue." *Tyson v. Ciba-Geigy Corp.*, 82 N.C. App. 626, 630, 347 S.E.2d 473, 476 (1986). Nonetheless, a trial court's ruling on a Rule 15(b) motion is not reviewable absent a showing of an abuse of discretion. *Id.*

Applying these principles to the case *sub judice*, we observe one of the "new" issues, *issue (c)*, was sufficiently pled in the complaint and therefore defendant had notice and may not complain of its amendment. Defendant may also not complain of the remaining "new" issues. *Issue (d)* deals with defendant's alleged negligence *at the time the 6 June 1986 subordination agreement was executed.* Although allegations in the complaint encompassed related matters, these were directed towards defendant's conduct *at the time the deed of trust was executed—more than one year before the time referred to in issue (d).* Accordingly, evidence relative to issue (d) would not tend to support any properly pled issue. With regard to *issues (a) and (b)*, no assertions in the complaint encompassed these matters and no evidence pertinent to these unpled issues tended to support a properly pled issue. Because evidence sustaining issues (a), (b) and (d) did not tend to support any properly pled issue and because defendant never specifically objected to that evidence as being outside the scope of the pleadings, he impliedly consented to trial on these issues. *See Mobley v. Hill*, 80 N.C. App. at 81, 341 S.E.2d at 347-48.

Moreover, the trial court has broad discretionary authority to permit amendment to the pleadings at any time, in particular where the opposing party will suffer no prejudice and the amendment will serve to present the action on its merits. *See Williams v. Sapp*, 83 N.C. App. 116, 118, 349 S.E.2d 304, 305 (1986). In the present case, even before plaintiffs moved to amend, defendant moved for a directed verdict on the allegations in the complaint and "the additional contentions . . . that are not alleged." Defendant thus understood additional issues, other than those set out in the pleadings, were being raised. Furthermore, defendant declined the court's offer of a limited continuance to further prepare a defense to the "new" unpled allegations. Thus, defendant has suffered no prejudice as a result of the amendment.

SMITH v. CHILDS

[112 N.C. App. 672 (1993)]

Based upon the foregoing considerations, we hold the trial court did not abuse its discretion in allowing plaintiffs' motion to amend.

## II.

[2] We next address defendant's contention the trial court erred by allowing plaintiffs' expert witness, a Union County attorney, to testify as to legal conclusions. According to defendant, the expert's testimony improperly invaded the trial court's province to determine the legal effect of the purchase money note and the guaranty executed by Wood as well as the meaning of certain language in these documents. We agree.

## A.

The permissible scope of expert opinion testimony in a legal malpractice trial has not been frequently explored by our appellate courts. As we herein remand for a new trial based upon a later assignment of error, it is appropriate to examine principles which have previously been established and to thereafter address defendant's arguments in some detail.

Preliminarily, "[t]he general expert testimony rules applicable in all civil cases apply to legal malpractice actions." Breslin and McMonigle, *The Use of Expert Testimony in Actions Against Attorneys*, 47 Ins. Couns. J. 119, 119-20 (1980), *cited with approval in Rorrer v. Cooke*, 313 N.C. 338, 356, 329 S.E.2d 355, 366 (1985). Thus, as a general rule, expert testimony is admissible when the expert's specialized expertise will assist the trier of fact in understanding the evidence or in determining a fact in issue. N.C.R. Evid. 702. Pursuant to N.C.R. Evid. 704, expert opinion testimony may even embrace an ultimate issue to be decided by the trier of fact. *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 585, 403 S.E.2d 483, 488 (1991).

In determining whether particular expert testimony should be admitted, "the inquiry should be not whether it invades the province of the jury, but whether . . . the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E.2d 905, 911 (1978); Rule 704 official commentary. *There are, nevertheless, limitations on the admissibility of expert opinion testimony.* An expert is not allowed to testify that a particular legal standard, or legal term of art, has been met. *HAJMM,*

328 N.C. at 586, 403 S.E.2d at 488. Terms such as, "testamentary capacity," and "premeditation and deliberation" are legal conclusions premised upon particular underlying facts. When the expert witness is *an expert legal witness*, the avoidance of testimony regarding legal conclusions can be problematical since attorneys deal with legal terms of art on a daily basis. However, while an expert may testify to the existence of the factual components, he may not testify as to the legal conclusions; such testimony invades the court's province to determine the applicable law and to instruct the jury on that law. *HAJMM*, 328 N.C. at 586-87, 403 S.E.2d at 488-89. The official commentary following Rule 704 provides a helpful example of this distinction:

> [T]he question *"Did T have capacity to make a will?"* would be excluded, while the question, *"Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?"* would be allowed.

(emphasis added).

Other difficulties may also arise because of the nature of the action. Proof of legal malpractice necessitates an attempt to show what should have occurred without some error on the part of the attorney. Mallen & Smith, *Legal Malpractice* § 27.7 (1989). Accordingly, these cases often involve interpreting *the law itself* and posing such questions as *"Did the attorney make an error of law?"* Unlike most other experts, the legal expert is well versed in the law and has knowledge of the *legal issues* facing the court. However, while the legal expert may testify regarding the factual issues facing the jury, he is *not allowed* to either *interpret the law* or *to testify as to the legal effect of particular facts. See Wise v. Wise*, 42 N.C. App. 5, 7, 255 S.E.2d 570, 572, *disc. review denied*, 298 N.C. 305, 259 S.E.2d 300 (1979). Allowing expert testimony on these matters would amount to a jury instruction on the applicable law, thereby improperly invading the province of the court. *Williams v. Sapp*, 83 N.C. App. 116, 119-120, 349 S.E.2d 304, 306 (1986); *see also Board of Transportation v. Bryant*, 59 N.C. App. 256, 260-61, 296 S.E.2d 814, 817 (1982).

### B.

In the case *sub judice*, defendant objects to the expert's testimony concerning: (1) the subordination provision of the purchase money deed of trust and (2) the purchasers' personal guaranty.

Regarding the first matter, plaintiffs' legal expert was asked to review a clause in the purchase money deed of trust which required the subordination of plaintiffs' lien to any new lien for "development loans, construction loans, permanent financing, *or otherwise.*" Over defendant's objection, the expert expressed his opinion the language "or otherwise" did not adequately limit the use of any new loan proceeds and thus did not provide plaintiffs with adequate protection in the event of subordination.

By means of this testimony, the expert was allowed to give his interpretation of the contract. A contract which is plain and unambiguous on its face will be interpreted by the court as a matter of law; however, if the contract is ambiguous, interpretation of the contract is a question for the jury. *Thompson-Arthur Paving Co. v. Lincoln Battleground Associates, Ltd.*, 95 N.C. App. 270, 280, 382 S.E.2d 817, 823 (1989). Even assuming the contract was ambiguous, the expert's testimony should not have been allowed. It is generally accepted that if technical terms are used in a contract, expert testimony is admissible to explain the meaning of such terms as an aid in interpreting the instrument. *See Stewart v. Railroad*, 141 N.C. 253, 262-63, 53 S.E. 877, 880 (1906); 32 C.J.S. *Evidence* § 546(74) (1964). However, "[w]hen the jury is in as good a position as the expert to determine an issue, the expert's testimony is properly excludable because it is not helpful to the jury." *Braswell v. Braswell*, 330 N.C. 363, 377, 410 S.E.2d 897, 905 (1991), *reh'g denied*, 330 N.C. 854, 413 S.E.2d 550 (1992). Moreover, the opinion of an attorney as to the legal effect of a document is generally not admissible. 32 C.J.S. *Evidence* § 546(86). Here, the expert's testimony was not offered to explain any technical terms, or for any other valid purpose, and therefore should have been excluded.

Plaintiffs' expert was also allowed to testify "the value of a personal guaranty of a purchase money debtor, in my experience is virtually worthless. It has not been settled in the law that that particular kind of guaranty in a purchase money deed of trust and note situation is enforceable." By this testimony the expert gave his individual interpretation of North Carolina law; this was improper as it amounted to no more than a jury instruction on the law relating to personal guaranties. *See Williams v. Sapp*, 83 N.C. App. 116, 120, 349 S.E.2d 304, 306 (1986).

Since we are remanding for a new trial on other grounds, it is unnecessary to determine whether defendant suffered prejudice as a result of the expert's erroneously admitted testimony.

### III.

[3] Defendant further contends the trial court should have determined as a matter of law plaintiffs could (1) seek a deficiency judgment on the purchase money note and (2) enforce Wood's personal guaranty. Specifically, defendant argues the court erred by denying his motions for directed verdict and judgment notwithstanding the verdict (JNOV) since the proximate cause of plaintiffs' losses was plaintiffs' failure to enforce either the note or the personal guaranty. We are not persuaded by defendant's argument.

As a motion for JNOV is simply a motion that judgment be entered in accordance with an earlier directed verdict motion, the same standards are used to review both motions. *Everhart v. LeBrun*, 52 N.C. App. 139, 141, 277 S.E.2d 816, 818 (1981). In ruling upon a motion for JNOV, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* JNOV should be entered only where the evidence, so considered, is insufficient to support a verdict for the non-moving party. *Summer v. Allran*, 100 N.C. App. 182, 183, 394 S.E.2d 689, 690 (1990), *disc. review denied*, 328 N.C. 97, 402 S.E.2d 428 (1991).

While defendant categorizes his argument as plaintiffs' failure to establish the element of *proximate cause*, his contention is actually premised upon the related principle of *failure to mitigate damages*. *Proximate cause* is an *element* of a negligence action and thus a plaintiff must establish this element in order to recover. *See Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). The failure to mitigate damages, meanwhile, is a *defense* which "preclude[s] recovery for those consequences of the tortfeasor's act which could have been avoided by acting as a reasonable prudent man . . . ." *Radford v. Norris*, 63 N.C. App. 501, 502, 305 S.E.2d 64, 65 (1983). As with other defenses, the burden is on defendant to show plaintiff neglected to mitigate damages. *Gibbs v. Western Union Telegraph Co.*, 196 N.C. 516, 522, 146 S.E. 209, 213 (1929).

In a negligence action, it is well settled the party wronged must use due care to minimize the loss occasioned by defendant's

negligence. *Gibbs v. Western Union*, 196 N.C. at 522, 146 S.E.2d at 213; N.C.P.I., Civ. 810.49; 25 C.J.S. *Damages* § 33 (1966). Unlike a plaintiff's failure to establish the *element* of proximate cause, the failure to mitigate damages is *not* an absolute bar to all recovery; rather, a plaintiff is barred from recovering for those losses which could have been prevented through the plaintiff's *reasonable efforts. Stimpson Hosiery Mills, Inc. v. Pam Trading Corp.*, 98 N.C. App. 543, 551, 392 S.E.2d 128, 133, *disc. review denied*, 327 N.C. 144, 393 S.E.2d 909 (1990).

The mitigation of damages rule, however, is founded upon an injured person's duty to take *reasonable* efforts to minimize loss. The rule is inapplicable where plaintiff could not possibly have avoided the loss. 25 C.J.S. *Damages* § 33. Furthermore, plaintiff need not pursue a particular corrective measure if a reasonable person would conclude the measure was imprudent, impractical, or would likely be unsuccessful. 25 C.J.S. *Damages* § 33; N.C.P.I., Civ. 810.49. In essence, the mitigation rule does not require plaintiff to grasp vainly for twigs while drowning in flood-waters of defendant's creation. Accordingly, if in the case *sub judice* a reasonable person would not have attempted to enforce either (1) *the purchase money note* or (2) *Wood's personal guaranty*, defendant would not be entitled to JNOV on the issue of damages based upon plaintiffs' failure to mitigate.

### A. *The Promissory Note.*

The question here is whether North Carolina's anti-deficiency statute prohibits the holder of a purchase money promissory note secured by a junior deed of trust from enforcing the note once the security has been "destroyed" by foreclosure of the senior deed of trust. In pertinent part, our anti-deficiency statute provides:

> In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust[,] . . . the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same . . . .

N.C.G.S. § 45-21.38 (1991).

Both residential and commercial transactions are covered by this statute. *Barnaby v. Boardman*, 313 N.C. 565, 330 S.E.2d 600 (1985). In *Barnaby* our Supreme Court held G.S. § 45-21.38 bars

*any deficiency suit* on a purchase money note either before *or after* foreclosure destroys the security. *Id.* at 571, 330 S.E.2d at 603. "[A] creditor is limited *to the property conveyed* when the note and mortgage or deed of trust are executed to the seller of the real estate and the securing instruments state that they are for the purpose of securing the balance of the purchase price." *Id.* at 571, 330 S.E.2d at 604 (quoting *Ross Realty Co. v. First Citizens Bank & Trust Co.*, 296 N.C. 366, 370, 250 S.E.2d 271, 273 (1979)). In a case similar to the one *sub judice*, this Court held G.S. § 45-21.38 bars a deficiency action on a purchase money promissory note secured by a junior deed of trust after foreclosure on the senior deed of trust. *Sink v. Egerton*, 76 N.C. App. 526, 528-29, 333 S.E.2d 520, 521-22 (1985).

Based upon *Barnaby* and *Sink* (which were binding when Wood defaulted on the purchase money note), we hold a reasonable person at the time of Wood's default would have concluded an attempt to enforce the purchase money note would likely be unsuccessful.

### B. *The Personal Guaranty*

In this instance, the question is whether foreclosure of a senior deed of trust also prohibits the holder of a junior deed of trust from bringing an action on the debtor's personal guaranty of the outstanding debt.

While personal guaranties are not explicitly covered by G.S. § 45-21.38, the statute does preclude "a deficiency judgment *on account of*" a purchase money deed of trust. This Court has previously commented even a guarantor arguably could assert G.S. § 45-21.38 as a defense. *Chemical Bank v. Belk*, 41 N.C. App. 356, 368-69, 255 S.E.2d 421, 429, *disc. review denied*, 298 N.C. 293, 259 S.E.2d 911 (1979). Moreover, our Supreme Court has ruled the guarantor of a purchase money deed of trust is entitled to plead the anti-deficiency statute as a defense in an action brought on his personal guaranty. *Virginia Trust Co. v. Dunlop*, 214 N.C. 196, 198-99, 198 S.E. 645, 646 (1938). While the anti-deficiency statute at issue in *Virginia Trust* was not identical to present G.S. § 45-21.38, both statutes are similar in that guarantors are not expressly covered.

In keeping with both *Virginia Trust* and *Chemical Bank*, we hold a reasonable person at the time of Wood's default would have concluded any efforts to enforce Wood's personal guaranty would

be unsuccessful because, in all likelihood, G.S. § 45-21.38 would operate to bar recovery.

Since a reasonable person would have concluded efforts to enforce (1) the purchase money promissory note and (2) Wood's personal guaranty would have been unsuccessful, defendant was not entitled to JNOV based upon plaintiffs' failure to mitigate damages. Plaintiffs were required to take only reasonable efforts to mitigate their damages; they were not required to attempt enforcement of either the note or the guaranty when a reasonable person would have concluded such efforts would be futile. 25 C.J.S. *Damages* § 33.

## IV.

[4] Defendant also contends the trial court erred in instructing the jury on the proper measure of damages. We determine this contention has merit.

While the amount of damages is ordinarily a question of fact, the proper standard *for measuring damages* is a question of law fully reviewable by this Court. *Olivetti v. Ames Business Systems, Inc.*, 319 N.C. 534, 548, 356 S.E.2d 578, 586-87, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 92 (1987). In a case of legal malpractice, the determination of proximate cause will ordinarily resolve any question as to the proper measure of damages since an attorney is liable only for those damages proximately resulting from his negligence. *See Hodges v. Carter*, 239 N.C. 517, 520, 80 S.E.2d 144, 146 (1954). More precisely, the proper measure of damages in such an action is the *difference* between (1) plaintiff's actual pecuniary position and (2) "what it should have been had the attorney not erred." 1 Mallen & Smith, *Legal Malpractice* § 16.4 (1989). The practical application of this standard will vary from case to case depending upon the nature of the attorney's undertaking for the client. *Id.* The valuation of any lost benefit is ordinarily based upon the circumstances existing at the time of the attorney's negligent act or omission. Mallen & Smith § 16.1.

In the case *sub judice*, the jury received the following instructions on the measure of damages:

A person who suffers injury or damage proximately caused by the negligence of an attorney is entitled to recover in a lump sum the present worth of all damages, past and present, which naturally and proximately result from such negligence.

Such damages include the fair market value of the subject property at the time of the foreclosure sale, less the expenses of foreclosure proceedings on the purchase money deed of trust.

\* \* \* \* \*

If you answer this issue in any amount, you should award such damages as you find from the evidence and by its greater weight is fair compensation for any damage the plaintiffs have sustained as a proximate result of the defendant's negligence.

While well-intentioned and given in the absence of any applicable pattern instruction, this portion of the court's charge was erroneous.

*First*, plaintiffs' claim is based upon several alleged acts of negligence. We find it necessary to discuss only two of these theories: (1) defendant's failure to inform plaintiffs of their absolute right to foreclose at the time the purchase money note and deed of trust were in default and (2) defendant's failure to require Wood to use the $380,000 loan (to which plaintiffs subordinated their deed of trust) to improve the property. The trial court's instructions indicate the damages recoverable under *both* theories would "include the fair market value of the subject property at the time of the [hypothesized] foreclosure sale, less the expenses of foreclosure proceedings . . . ." This amount would not be the proper measure of damages under plaintiffs' second theory.

*Second*, the jury was not instructed on the *exclusive nature* of the aforementioned two theories. An award of damages on the *first theory* assumes plaintiffs (as plaintiff Smith testified) would have foreclosed if so advised. Had such foreclosure taken place, plaintiffs could not also have subordinated their deed of trust and the question of imposing conditions upon the use of proceeds from the $380,000 loan (plaintiffs' *second theory*) would never have arisen. Accordingly, if damages were awarded under plaintiffs' first theory, damages could not also be awarded under plaintiffs' second theory.

*Third*, the jury was not charged to consider monies which plaintiffs actually received from the sale of their land. In essence, it received no instruction that plaintiffs could only be awarded the difference between (1) their present pecuniary position (with such financial benefits as they have *actually received*) and (2) their pecuniary position after the negligent acts. *See* discussion of Mallen & Smith § 16.4, *supra; see also Godwin v. Wilmington and Weldon Railroad Co.*, 104 N.C. 146, 147-48, 10 S.E. 136 (1889) (where defend-

**SMITH v. CHILDS**

[112 N.C. App. 672 (1993)]

ant's negligence caused the death of plaintiff's cow, the jury was properly instructed that the measure of damages was the value of the live cow less the $1.50 plaintiff received for the hide).

Ordinarily, where the issue of damages is affected by prejudicial error, we would remand for a new trial on solely the issue of damages. *See Munie v. Tangle Oaks Corp.*, 109 N.C. App. 336, 344, 427 S.E.2d 149, 153 (1993). However, defendant also argues the instructional errors make it "impossible to determine upon which allegation the jury ultimately based its verdict. The trial court thus erred in failing to grant [d]efendant's motion for a new trial . . . ."

As previously discussed, at least *two* of plaintiffs' theories of negligence were mutually exclusive, *i.e.*, while defendant could be found negligent under both theories, plaintiffs *cannot recover under both theories*. Unfortunately, the trial court grouped these theories together and instructed the jury they could answer the negligence question "Yes" if they found defendant negligent under any *single* theory. Thus, it is unclear whether the jury found defendant negligent under all theories or just one. Furthermore, since the jury never received an instruction regarding the exclusive nature of recovery under the aforementioned theories, it is *uncertain upon which theory damages were awarded*. The jury's verdict provides no assistance; it merely reflects: (1) defendant was negligent and (2) the amount of damages.

Our Supreme Court has recognized "[i]t is misleading to embody in one issue two propositions as to which the jury might give different responses." *Edge v. North State Feldspar Corp.*, 212 N.C. 246, 247, 193 S.E. 2 (1937). "Where a verdict is so . . . indefinite that the court cannot determine what judgment should be rendered . . . it must be set aside and a new trial awarded." *Frick Co. v. Shelton*, 201 N.C. 71, 74, 158 S.E. 837, 839 (1931); *see also Gibson v. Central Manufacturers' Mutual Ins. Co.*, 232 N.C. 712, 715-16, 62 S.E.2d 320, 322 (1950). Because in the case *sub judice* it is impossible to determine upon which mutually exclusive theory of negligence the jury awarded damages, and because the jury received an erroneous instruction on the amount of damages recoverable under one of these theories, the verdict is fatally uncertain and we are constrained to remand for a new trial.

We note with sympathy "the problems faced by a trial judge in charging the jury are complex." N.C.P.I., *Motor Vehicle Negligence*

§ .010. This is particularly true in the area of legal malpractice where there are few established guidelines. Accordingly, we advise the trial court that upon remand any mutually exclusive theories of negligence should be independently submitted to the jury, thereby avoiding an uncertain jury verdict. Furthermore, if the jury awards damages based upon two or more mutually exclusive theories of recovery, plaintiff should choose between these damage awards. *See Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 426-27, 344 S.E.2d 297, 301, *disc. review denied*, 318 N.C. 283, 347 S.E.2d 464 (1986) (where there are two mutually exclusive theories of recovery, "plaintiff should be allowed to elect her remedy *after* the jury's verdict."). We express no opinion, however, as to whether any of plaintiffs' negligence theories would support an award of damages.

Since we are remanding for a new trial, we find it unnecessary to address defendant's remaining assignments of error as they may not arise upon re-trial.

Reversed and remanded for a new trial.

Judges EAGLES and ORR concur.