Carter v. Clements Walker PLLC, 2014 NCBC 1.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 4333

RONALD CARTER,

               Plaintiff,

     v.

CLEMENTS WALKER PLLC, a North
Carolina professional limited liability
company;
F. RHETT BROCKINGTON, an
individual; and
RALPH H. DOUGHERTY, an individual;

               Defendants.

**ORDER AND OPINION**

{1}     THIS MATTER is before the court on Defendants' Motion for Summary Judgment, Defendants' Motion to Strike, and Plaintiff's Motion for Leave to Present Additional Evidence. For the reasons stated below, the Motion for Summary Judgment and Motion to Strike are GRANTED, and the Motion for Leave to Present Additional Evidence is DENIED.

     *Harrington Law, P.C. by James M. Harrington for Plaintiff Ronald Carter.*

     *Poyner & Spruill LLP by Cynthia L. Van Horne and E. Fitzgerald Parnell, III for Defendants Clements Walker PLLC and F. Rhett Brockington.*

     *James, McElroy & Diehl, P.A. by John S. Arrowood and Edward T. Hinson, Jr. for Defendant Ralph H. Dougherty.*

Gale, Judge.

# I.    PROCEDURAL BACKGROUND

{2}    This action was filed in Mecklenburg County on February 29, 2008. The matter was designated a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated March 3, 2008 and then assigned to the Judge Ben F. Tennille, then Chief Special Superior Court Judge for Complex Business Cases.

{3}    In March 2010, in ruling on Defendants' Motions to Dismiss, Judge Tennille held that the Complaint did not implicate a substantial issue of patent law sufficient to place the case within the exclusive jurisdiction of the federal courts under 38 U.S.C. § 1338(a) and that only Nevada corporation Revolutionary Concepts, Inc. ("RCI-NV"), a prior plaintiff in this case to whom Plaintiff Ronald Carter ("Carter") assigned the patent rights, had standing to assert the claims raised in the Complaint. *See generally Revolutionary Concepts, Inc. v. Clements Walker, PLLC*, 2010 NCBC LEXIS 8 (N.C. Super. Ct. Mar. 9, 2010).  Defendants' appeal was dismissed as interlocutory. *See generally Revolutionary Concepts, Inc. v. Clements Walker, PLLC*, No. COA10-627, 2011 N.C. App. LEXIS 1391 (N.C. App. July 5, 2011).

{4}    After Judge Tennille's retirement, this case was reassigned to the undersigned.  The court granted summary judgment in Defendants' favor on all claims. *See generally Revolutionary Concepts, Inc. v. Clements Walker PLLC*, 2012 NCBC LEXIS 14 (N.C. Super. Ct. Mar. 8, 2012).  Plaintiffs then appealed both Judge Tennille's prior order and the summary judgment on RCI-NV's claims.  As to Judge Tennille's order on standing, the Court of Appeals held that, because legal malpractice claims in North Carolina are unassignable, Carter retained his malpractice claim, had standing to assert it, and his assignment of that claim to RCI-NV was invalid. *Revolutionary Concepts, Inc. v. Clements Walker PLLC*, __ N.C. App. __, 744 S.E.2d 130, 134 (N.C. App. 2013).  The Court of Appeals affirmed both summary judgment in Defendants' favor on claims alleged by RCI-NV and the court's denial of RCI-NV's oral Rule 15 and Rule 17 motions seeking to join North

Carolina corporation Revolutionary Concepts, Inc. ("RCI-NC") as a plaintiff in the case. *Id.* at 135–38. The Court of Appeals also affirmed summary judgment in favor of prior individual defendants Greg Clements and Christopher Bernard. Thus, only Carter's claim for legal malpractice against Clements Walker, PLLC ("CW"), F. Rhett Brockington, and Ralph H. Dougherty remains for disposition after remand.

{5}    Defendants jointly filed a Motion for Summary Judgment under Rule 56 on June 21, 2013 based on the assertion that Carter has failed to produce or forecast any damages evidence in support of his legal malpractice claim. On July 19, 2013, Carter filed a Motion for Continuance and Discovery under Rule 56(f) requesting additional time to seek discovery from third parties to develop his damages evidence. Upon Defendants' consent, the court granted that motion on August 7, 2013, affording Carter until September 17, 2013 to conduct additional discovery and respond to Defendants' Motion for Summary Judgment. Carter responded to the Motion for Summary Judgment on that date. Defendants later filed a reply brief and a Motion to Strike the exhibits attached to Carter's response. After briefing on both the Motion for Summary Judgment and the Motion to Strike was complete, the court heard oral argument on both Motions on October 29, 2013 and took the matters under advisement.

{6}    Carter filed a Motion for Leave to Present Additional Evidence on November 25, 2013. Defendants responded in opposition on December 4, 2013. All three Motions have been fully briefed, a hearing was held on the Motion for Summary Judgment and Motion to Strike,[1] and all three Motions are ripe for disposition.

---

[1] Neither Party requested hearing on the Motion for Leave to Present Additional Evidence. In its discretion, the court has not held a separate hearing on this motion and decides it on the papers.

## II.    FACTUAL BACKGROUND

{7}    Past opinions of this court and the Court of Appeals provide a detailed summary of the allegations in this case. *Revolutionary Concepts, Inc.*, __ N.C. App. at ___, 744 S.E.2d at 131–32; *Revolutionary Concepts, Inc.*, 2012 NCBC LEXIS, at *1–*11.  In sum, Carter and RCI retained CW to seek both domestic and foreign patent protection for Carter's invention.  CW filed a domestic patent application but allowed that application to be published before filing an application for international patent rights (the "PCT application").  As a result, RCI and Carter could not obtain patents in countries requiring absolute public novelty before granting a patent.  Carter and RCI's domestic patent application was eventually approved.

{8}    The court does not make findings of fact when ruling on a motion for summary judgment. *See Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 164–65 (1975).  It is, however, appropriate for the court to describe the undisputed facts or lack of facts the record discloses in order to provide context for the court's ruling on the motion.  The court believes the following facts are either uncontested or, if contested, have been construed in favor of the party opposing the Motion.

{9}    Carter claims that he suffered injury because of the loss of patent protection in foreign jurisdictions.  (Compl. ¶¶ 30, 36, 43, 50; Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. 7–8.)[2]  The Complaint also alleges that RCI paid CW $3,600 in fees to prepare and file the PCT application, but CW applied those fees towards other matters.  (Complaint ¶¶ 55–58.)[3]

---

[2] The court cannot consider an unverified pleading in determining whether a genuine issue of material fact exists. *Rankin v. Food Lion*, 210 N.C. App. 213, 220, 706 S.E.2d 310, 315–16 (2011) (citing *Tew v. Brown*, 135 N.C. App. 763, 767, 522 S.E.2d 127, 130 (1999)).  The court describes the allegations from the Complaint only to frame the analysis of whether any evidence in the record supports the injuries alleged in the Complaint.

[3] At the hearing, Carter's counsel argued that this payment provided sufficient evidence of Carter's damages to overcome summary judgment.  The check evidencing this payment, submitted to the court in RCI's and Carter's opposition to summary judgment in 2011 and authenticated through Carter's affidavit, was signed by Garry Stevenson, an officer of RCI, and drawn on an account belonging to RCI.  (Pl.'s Resp. Opp'n Defs.' Second Mot. Summ. J., Exs. A, B, Nov. 14, 2011.)  Carter

A.  Evidence Presented on Carter's Damages

{10}  Carter was deposed in 2007 and 2010 and examined on his damages contentions.  In the current record, neither Carter nor RCI has quantified the sales potential of the invention, (Carter Dep. 30:11–30:15, Apr. 11, 2007,) nor has he or anyone else researched the sales potential of the invention, (Carter Dep. 35:12–35:22, Apr. 11, 2007.)[4]  Neither Carter nor RCI has sought to manufacture the invention, but only hoped to license it.  (Carter Dep. 45:5–45:11, Apr. 11, 2007.)  Carter has expressed no knowledge of the foreign marketing or licensing potential of the invention. (Carter Dep. 72:11–72:15, Apr. 11, 2007.)  In 2007, Carter did not know of anyone who placed any monetary value on the invention or patent, nor could he name any company or product in the target markets for the invention that was infringing or exploiting the invention.  (Carter Dep. 84:13–85:13, Apr. 11, 2007.)

{11}  As of 2007, Carter had not made any profit on the invention, nor had anyone advised him when the patent would attain commercial value.  (Carter Dep. 99:2–99:12, Apr. 11, 2007).  Although Carter thought the patent would develop commercial value in the near future, he did not then have any documentation or research substantiating that opinion.  (Carter Dep. 99:13–100:18, Apr. 11, 2007.)  No one had yet approached him about buying RCI or the patent rights to the invention.  (Carter Dep. 100:24–101:4, Apr. 11, 2007.)  In 2010, Carter again acknowledged that he had never licensed the invention.  (Carter Dep. 109:23–110:3, May 25, 2010.)

{12}  RCI's most recent annual report, dated April 15, 2013 and signed by Carter, states that RCI cannot guarantee that the invention or patent will generate revenue or that it will even be developed.  (Defs.' Mot. Summ. J. Ex. 3, 8–9.)  RCI

---

also testified, in both his deposition and the 2011 affidavit, that RCI made the payment.  (Pl.'s Resp. Opp'n Defs.' Second Mot. Summ. J., Exs. A, B, Nov. 14, 2011; Carter Dep. 131:6–131:10, Apr. 11, 2007.)  Thus, the injury, if any, sustained by misuse of these funds belongs to RCI, not Carter.
[4] The court acknowledges that Carter has now requested leave to submit additional material which he contends represents such value.

acknowledges that successful commercialization of the invention is likely contingent upon third-party manufacturing or licensing agreements that may never materialize. (Defs.' Mot. Summ. J. Ex. 3, 8–9.) The report does not contain any evidence supporting a conclusion that there will ultimately be successful commercialization.

{13} The record also contains excerpts from an expert report by Paul Gariboldi asserting, with a confidence level of over 90%, the bare conclusion that "RCI lost total gross profits of approximately $33 million between the years of 2010 and 2020" by losing foreign patent rights. (Defs.' Mot. Summ. J. Ex. 6, 5.)

B.  Discovery Conducted After Carter's Rule 56(f) Motion

{14} As noted, the court granted Carter's Rule 56(f) motion to allow additional discovery of damages evidence. During the extended period, Carter admitted in response to written discovery that "no person or entity has ever purchased or licensed" the invention from him or RCI. (Reply Pl.'s Resp. Defs.' Mot. Summ. J., Ex. B.) When asked to produce all documents showing any damages claimed from lost patent rights, Carter responded that all such documents had already been produced. (Reply Pl.'s Resp. Defs.' Mot. Summ. J., Ex. C, 6.)

{15} Carter objected to producing any documents reflecting any person's or entity's alleged or possible infringement of rights in the invention on the basis that such documents are "not relevant to any issue before the Court and not reasonably calculated to lead to the discovery of admissible evidence." (Reply Pl.'s Resp. Defs.' Mot. Summ. J., Ex. C, 20.) Carter objected on the same grounds when asked to produce any agreements, communications, meeting records, letters of intent, or term sheets between Carter or RCI and any other person or entity regarding development, licensing, or commercialization of the invention. (Reply Pl.'s Resp. Defs.' Mot. Summ. J., Ex. C, 7–10, 12.) Carter lodged the same relevancy objection to producing any "documents evidencing any investment of any kind by any third party in the" patented invention. (Reply Pl.'s Resp. Defs.' Mot. Summ. J., Ex. C,

13.) Carter also declined, on relevancy grounds, to produce any documents related to a series of transactions announced by RCI that could have involved realization of any commercial value in the invention or patent. (Reply Pl.'s Resp. Defs.' Mot. Summ. J., Ex. C, 14–20.)

{16} At the October 29, 2013 oral argument, Carter did not contest Defendants' representations that he had not supplemented or modified any of these discovery responses. Carter did not advise the court or Defendants at the oral argument that RCI had reached an agreement a month earlier on those matters which are now the subject of Plaintiff's effort to supplement the record after oral argument through his Motion for Leave to Present Additional Evidence.

{17} The court first considers the Motion for Summary Judgment based on the evidentiary record as it was presented before and at the oral argument on the Motion for Summary Judgment. It will then address Plaintiff's subsequent effort to supplement the record.

## III. ANALYSIS

{18} Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions, and submitted affidavits show that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c); *Andresen v. Progress Energy, Inc.*, 204 N.C. App. 182, 184, 696 S.E.2d 159, 160–61 (2010).

{19} The moving party must demonstrate the absence of a triable issue and does so either: "(1) by showing that an essential element of the opposing party's claim is non-existent; or (2) by demonstrating that the opposing party cannot produce evidence sufficient to support an essential element of the claim or overcome an affirmative defense which would work to bar its claim." *Wilhelm v. City of Fayetteville*, 121 N.C. App. 87, 90, 464 S.E.2d 299, 300 (1995) (citing *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 414 S.E.2d 339 (1992)).

{20}     If the moving party carries this burden, the non-moving party "must 'produce a forecast of evidence demonstrating that the [non-moving party] will be able to make out at least a prima facie case at trial.'" *Roumillat*, 331 N.C. at 63, 414 S.E.2d at 342 (quoting *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)); *Rankin*, 210 N.C. App. at 217, 706 S.E.2d at 313–14 (2011); *see also* N.C. Gen. Stat. § 1A-1, Rule 56(e) (non-moving party "must set forth specific facts showing that there is a genuine issue for trial."). This forecast "may not rest upon the mere allegations or denials of [a] pleading," N.C. Gen. Stat. § 1A-1, Rule 56(e), nor may it rest upon unsworn affidavits or other inadmissible materials, *see Rankin*, 210 N.C. App. at 218–22, 706 S.E.2d at 314–16 (affirming summary judgment where only inadmissible, unauthenticated documents and no affidavits or sworn testimony were submitted in response to summary judgment motion).

A.     <u>Carter Has Failed to Produce Evidence of Damages Entitling Him to Proceed on His Claim</u>

{21}     A plaintiff in legal malpractice case must "prove that he would not have suffered the harm alleged absent the negligence of his attorney." *Hummer v. Pulley, Watson, King & Lischer, P.A.*, 157 N.C. App. 60, 66, 577 S.E.2d 918, 923 (2003) (citing *Rorrer v. Cooke*, 313 N.C. 338, 361, 329 S.E.2d 355, 369 (1985)). Damages in a legal malpractice action are "the difference between (1) plaintiff's actual pecuniary position and (2) what it should have been had the attorney not erred." *Smith v. Childs*, 112 N.C. App. 672, 685, 437 S.E.2d 500, 509 (1993). Although "practical application of this standard will vary from case to case depending upon the nature of the attorney's undertaking for the client[,]" the value "of any lost benefit is ordinarily based upon the *circumstances existing at the time of the attorney's negligent act or omission.*" *Id.* (emphasis added).[5] Damages

---

[5] The Parties disagree over whether Carter's assignment of patent rights and rights in the invention to RCI precludes his ability to recover damages caused by loss or impairment of those rights after the date of this assignment. The court does not reach this issue because it concludes that, even if Carter

evidence must "allow the finder of fact to calculate the amount of damages with reasonable certainty." *McAdoo v. Univ. of N.C. at Chapel Hill*, __ N.C. App. __, 736 S.E.2d 811, 822 (2013) (citing *Olivetti Corp. v. Ames Bus. Sys. Inc.*, 319 N.C. 534, 547–48, 356 S.E.2d 578, 586 (1987)).

{22}     There is no evidence in the record from which the court or a jury could conclude with reasonable certainty that Carter suffered any actual damages as a result of CW's alleged malpractice. To the contrary, Carter has testified on multiple occasions that, despite U.S. patent protection for the invention, neither Carter nor RCI has ever manufactured the invention, nor has any person or entity licensed the invention. As of 2007, neither Carter nor RCI had ever been advised of the invention's commercial value. In his September 2013 discovery responses, Carter admits no person or entity has ever purchased or licensed the invention, either domestically or abroad. Only Gariboldi's report, which estimates that RCI sustained $33 million in lost profits as a result of losing foreign patent protection, even purports to provide any valuation of RCI's damages. In light of the overwhelming evidence that neither RCI nor Carter had, at the time of his opinion, ever realized or reasonably projected any commercial value from the invention (even though it had domestic patent protection), Gariboldi's speculative, bare-bones conclusion is insufficient to create a genuine issue of material fact on whether Carter suffered damages.[6] *See IGEN, Inc. v. White*, 250 A.D.2d 463, 464–66, 672 N.Y.S.2d 867, 868–69 (N.Y. App. Div. 1998) (reversing trial court and granting summary judgment on legal malpractice claim based on failure to secure foreign patent protection where evidence showed invention had no commercial value and expert opinion on future value was "no more than idle speculation").

{23}     The court concludes that Defendants have demonstrated that Carter has not produced evidence sufficient to support the injuries alleged in the

---

could recover damages after the assignment of rights, he has not produced any competent evidence showing damages at any point in time.

[6] In his response to Defendants' Motion for Summary Judgment, Carter did not include any other portions of this report, argue that it creates a genuine issue of material fact as to Carter's damages, or otherwise attempt to support or bolster Gariboldi's opinion.

Complaint underlying his legal malpractice claim. Thus, to survive summary judgment, Carter must forecast competent evidence showing a prima facie case of damages.

       B.      <u>Carter Has Not Forecast Evidence Demonstrating a *Prima Facie* Case for Damages</u>

{24}    In response to Defendants' Motion for Summary Judgment, Carter filed a brief in opposition and five exhibits. Carter contends that Exhibit A is an "infringement analysis" assessing whether a security company's product infringes RCI's domestic patents on the invention. Exhibits B through E appear to be internet printouts of foreign products Carter argues are comparable to the invention. Carter did not submit any affidavits authenticating these exhibits, nor did he submit any other affidavit in opposition to Defendants' motion. Carter did not submit any deposition excerpts, answers to interrogatories, admissions, or any other materials in opposition to Defendants' motion.

       1.      <u>Carter's Exhibits are Inadmissible and Cannot be Considered in His Forecast of Evidence</u>

{25}    Defendants' Motion to Strike contends Carter's exhibits are inadmissible and may not be considered when evaluating the Motion for Summary Judgment. "[A]ffidavits or other materials offered which set forth facts which would not be admissible in evidence should not be considered when [considering a] motion for summary judgment." *Rankin*, 210 N.C. App. at 218, 706 S.E.2d at 314 (quoting *Wein II, LLC v. Porter*, 198 N.C. App. 472, 476–77, 683 S.E.2d 707, 711 (2009)). Evidence must be authentic to be admissible. N.C. Gen. Stat. § 8C-1, Rule 901. Unless a document is self-authenticating, *see* N.C. Gen. Stat. § 8C-1, Rule 902, the party offering the document must offer other "evidence sufficient to support a finding that the [document] in question is what its proponent claims[,]" N.C. Gen. Stat. § 8C-1, Rule 901. Unauthenticated "internet printouts . . . do not constitute admissible evidence for purpose of the analysis required in connection with . . . [a]

summary judgment motion[.]" *Rankin*, 210 N.C. App. at 222, 706 S.E.2d at 316.  All testimony, including opinion testimony, must be made under oath or affirmation to be admissible.  N.C. Gen. Stat. § 8C-1, Rule 603.

{26}   The statements in Exhibit A, the "infringement analysis," are not authenticated or made through an affidavit and cannot be considered testimonial evidence.  The document itself is not authenticated through affidavit or deposition testimony, nor is it self-authenticating.  Accordingly, Exhibit A is wholly inadmissible and may not be considered in ruling on the Motion for Summary Judgment.

{27}   Exhibits B, C, D, and E are all internet printouts showing other products similar to the invention.  Although Carter's counsel argues that these products allegedly compete in foreign markets where Carter's invention would have competed had Carter secured foreign patent protection, Carter has provided no affidavits, deposition testimony, other testimony, or evidence sufficient to authenticate these documents or the conclusions Carter draws from them.  Thus, the documents are inadmissible and may not be considered in ruling on the Motion for Summary Judgment.  Even if the court took judicial notice of the authenticity of the documents, as Carter urges, the documents, standing alone without any supporting testimony, do not contain any relevant evidence that would create a genuine issue of material fact on Carter's damages.

2.   <u>The Court Declines to Accept Carter's Late Affidavit and Then Does Not Separately Address the Substantial Question of Whether, Even if Accepted, Carter Has Demonstrated a Basis to Survive Summary Judgment</u>

{28}   Carter filed a Motion for Leave to Present Additional Evidence on November 25, 2013 offering affidavit testimony from Carter and RCI's Form 10-Q describing a transaction RCI, upon shareholder approval, may enter to sell the domestic patents covering the invention to a third party.  Carter contends that this evidence could not be presented to the court earlier "because it did not exist until"

November 19, 2013, the date when RCI's 10-Q was filed. (Mot. Leave Present Add'l. Evidence 2.) The court rejects the suggestion that Carter was not in a position to advise the court at oral argument of the essential facts he now wishes to use to defeat summary judgment. Carter had adequate opportunity to timely comply with Rule 56. He did not.

{29} Defendants contend, with supporting exhibits, that RCI announced this transaction in early September 2013, several weeks before Carter responded to Defendants' discovery requests seeking production of documents relevant to Carter's alleged damages. (Memo. Opp'n Pl.'s Mot. Leave Present Add'l Evidence 2–3, Exs. A–B.) In fact, the 10-Q report itself indicates that the RCI Board reached agreement on the transaction on September 23, 2013.

{30} Affidavits opposing a motion for summary judgment should be filed two days before the hearing date. N.C. Gen. Stat. § 1A-1, Rule 56(c). "[A] trial court may exclude . . . an untimely affidavit" from its consideration of a summary judgment motion. *Lockett v. Sister-2-Sister Solutions, Inc.*, 209 N.C. App. 60, 65, 704 S.E.2d 299, 302 (2011) (citing N.C. Gen. Stat. § 1A-1, Rule 56(c)). Although the court could accept late affidavits or evidence with a showing of excusable neglect, there has been no demonstration or effort to demonstrate excusable neglect here.

{31} Carter makes no effort to avoid the consequences of his own failure to produce documents related to this transaction, instead objecting that any additional documents were irrelevant. He should then be bound by his expressed position. (*See also* Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. 12 (evidence of the domestic patent's value "is not an appropriate direct measure of damages in this case").)

{32} Because the court concludes that Carter has failed to comply with Rule 56's requirement to make the proposed additional evidence a part of the record, the court does not undertake a complete assessment of whether the evidence is competent to forecast reasonably certain damages. The court does note, however, that even a cursory review of the affidavit and 10-Q suggests that RCI will remain insolvent after the transaction, even if it is eventually approved by the shareholders and finalized, the financial statements in the 10-Q are conditioned on the

accountants' going concern opinion, and there are no assurances that the patented technology will be further developed, sold, or licensed.

## IV.    CONCLUSION

{33}    In sum, Defendants have carried their burden to show that Carter has not produced any evidence of damages, and Carter has not presented any forecast of admissible evidence showing a prima facie case of damages that could be determined with reasonable certainty.[7]  Accordingly, the court must grant Defendants' Motion for Summary Judgment as to Carter's remaining claims for legal malpractice.

{34}    For the reasons expressed above, Defendants' Motion to Strike is GRANTED, Plaintiff's Motion for Leave to Present Additional Evidence is DENIED, and Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED, this the 10th day of January, 2014.

---

[7] Although Carter contends he "does not yet have full information about" foreign products that would infringe upon Carter's foreign patent rights, he responded to the Motion for Summary Judgment and contends he "forecast sufficient evidence of damages" to preclude summary judgment.  (Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. 14.)  If Carter needed additional discovery to prepare his damages evidence, he could have filed another Rule 56(f) motion seeking continuance of the summary judgment hearing. *See Rorrer*, 313 N.C. at 360, 329 S.E.2d at 369 (stating party must move for continuance of summary judgment hearing under Rule 56(f) if that party is unprepared to respond to summary judgment motion).